**Jose MARIN, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 126–91.**

Court of Criminal Appeals of Texas, En Banc.

March 10, 1993.

Rehearing Denied April 14, 1993.

276

Troy C. Hurley, Belton, for appellant.

Arthur C. "Capp" Eads, Dist. Atty., James T. Russell, Asst. Dist. Atty., Belton, and Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

MEYERS, Judge.

Appellant was convicted by a jury of conspiracy to deliver cocaine and sentenced by the trial court to twenty-five years confinement in the penitentiary. The Court of Appeals affirmed. *Marin v. State*, 801 S.W.2d 944 (Tex.App.—Austin 1990). We granted Appellant's petition for discretionary review to determine (1) whether failure of the trial judge to allow appointed counsel ten days of trial preparation in violation of article 1.051(e), Texas Code of Criminal Procedure, may be raised for the first time on appeal, and (2) whether, if so, such error is subject to a harm analysis under rule 81(b)(2), Texas Rules of Appellate Procedure.

I.

On January 27, 1988, an indictment was returned charging Appellant and twenty-one others with conspiracy to deliver cocaine. Although Appellant first retained counsel, his attorney was permitted to withdraw on February 16, 1988. The same day, John Gauntt was appointed by the trial judge to represent him. However, on May 10, 1988, Gauntt filed and was granted a motion to substitute Fancy Jezek as Appellant's attorney. Six days later, the case was called for trial. Jezek appeared and announced ready without applying for a continuance or otherwise suggesting that she required more time to prepare. The record does not reflect that Appellant personally consented to his attorney's announcement.

Our law provides that "[a]n appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in writing or on the record in open court." Tex.Code Crim.Proc. art. 1.051(e) (West Supp.1993). Appellant argued before the

Court of Appeals that this statute is "mandatory," by which he evidently meant that, absent express waiver, a trial judge is absolutely required by law to arrange his docket in such a way as to afford appointed counsel ten days of preparation time, and that no objection is required to preserve for appeal the failure of a trial judge to do so. The Court of Appeals accepted Appellant's argument that counsel was entitled to the statutory preparation time even without request, but nevertheless concluded that Rule 52(a), Texas Rules of Appellate Procedure, imposes a waiver requirement distinct from that set out in article 1.051(e).* Specifically, the court held:

> We do not suggest that appellant waived his right for his appointed attorney to have ten days preparation time before trial. The only way *that* right could have been waived was to have the consent of the defendant in writing or on the record in open court, as set forth in article 1.051(e) [Tex.Code.Crim.Proc. (West Supp.1993)]. The right that appellant did waive, however, was his right to *complain on appeal* of the trial court's failure to allow appointed counsel the full ten days. The waiver of that right is not governed by article 1.051(e), but by Rule 52(a) of the Texas Rules of Appellate Procedure.

*Marin*, 801 S.W.2d at 946 (emphasis in original).

II.

▮▮▮ In some respects, the reasoning of the Court of Appeals is plausible. The right to appeal is, indeed, distinct from other rights possessed by litigants. Accordingly, the fact that a litigant has certain legal rights at trial does not automatically entitle him to appeal the wrongful denial of those rights. *Olowosuko v. State*, 826 S.W.2d 940 (Tex.Crim.App.1992) (no right to appeal denial of rights affecting decision to proceed with an adjudication

---

* We, therefore, have no occasion to consider whether counsel's announcement of ready was tantamount to a waiver within the meaning of article 1.051(e), nor whether such announcement obviated the need for express consent by Appellant, since the Court of Appeals did not decide this question nor was it implicated by the briefs on discretionary review. To the extent that further proceedings will be required in the lower court, we regard this and other questions bearing on the ultimate disposition of this cause to remain open.

of guilt under art. 42.12 § 5(b), Tex.Code Crim.Proc.); *Basaldua v. State,* 558 S.W.2d 2, 5 (Tex.Crim.App.1977) (no right to appeal unreasonable conditions of probation imposed in modification order). Moreover, the right to appeal is not of constitutional magnitude, but is conferred by the Legislature. *See Galitz v. State,* 617 S.W.2d 949, 951 (Tex.Crim.App.1981) (opinion on rehearing); *Ex parte Spring,* 586 S.W.2d 482, 485–486 (Tex.Crim.App.1978). *See also Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). And that which the Legislature may withhold altogether, it may withhold in part. Thus, our lawmakers may deny the right to appeal entirely or the right to appeal only some things or the right to appeal all things only under some circumstances.

■ But Rule 52(a) is not an act of the Legislature, and it may not "abridge, enlarge, or modify the substantive rights of a litigant" or conflict with the Code of Criminal Procedure. Tex.Gov.Code Ann. § 22.-108(a); Tex.Code Crim.Proc.Ann. art. 44.-33(a). Because the Legislature has expressly conferred a broad right of appeal in criminal cases without excluding appellate review of all complaints unless first made to the trial judge, Rule 52(a) should not be construed independently to curtail the rights of appeal given by statutes such as articles 44.02 and 44.07 of the Code of Criminal Procedure.

■ Perhaps for this reason, the Court of Appeals held that Rule 52(a) "is plainly a rule of procedure and does not affect the substantive rights of a criminal defendant." *Id.* But, if construed as a procedural rule of general application, Rule 52(a) also conflicts with article 1.051(e) insofar as the latter governs procedure for relinquishing the substantive right to trial preparation time provided by statute. Accordingly, we think it far more consistent with the overall structure of our adversary system that litigants not be required by Rule 52(a) to do more for the preservation of their complaints on appeal than they must do at trial to secure benefits of the law to which they are entitled.

The system of adjudication at work in Texas, and generally throughout the United States, is chiefly characterized by an array of rules which are optional with the litigants. *Lankston v. State,* 827 S.W.2d 907, 908 (Tex.Crim.App.1992). This is consistent with an adversarial process in which the trial judge, as institutional referee, enforces rules of contention only when asked to do so by a litigant for whose benefit the rule exists. For example, evidence of a certain kind, such as hearsay, might be excluded upon the request of a party to the lawsuit. The trial judge has no duty to exclude it on his own, and would probably fall into error if he did. Once admitted without objection, such evidence enjoys a status equal to that of all other admissible evidence. In particular it has probative value and will support a judgment in favor of the party offering it. *Chambers v. State,* 711 S.W.2d 240, 245–247 (Tex.Crim. App.1986).

A cursory examination of the myriad evidentiary and procedural rules comprising our system reveals that most of them are of this type. Unless a litigant exercises his option to exclude evidence it is to be admitted. *See* Tex.R.Crim.Evid. 103(a). Unless he moves to avail himself of a procedural benefit, such as a jury shuffle or a peremptory challenge, no such benefit inures, and the panel will not be shuffled, nor will the juror be excluded. Because the judge has no independent duty in this regard, his failure to shuffle the panel or to excuse the veniremember isn't error about which complaint might later be made on appeal. In short, the rights of litigants in our system of adjudication are usually forfeited by a failure to exercise them. *See also* Art. 1.14(b), V.A.C.C.P.

That is not always the case, however. Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system. Tex.R.Crim.Evid. 103(d). A principle characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone. *Janecka v. State,* 823 S.W.2d 232, 243 n. 2 (Tex.Crim.App.1990) (opinion on rehearing). Instead, if a defen-

dant wants to relinquish one or more of them, he must do so expressly. *See* Art. 1.14(a), V.A.C.C.P. His rights to the assistance of counsel and to a jury trial are of this kind. Arts. 1.051(f), (g), (h), 1.13, V.A.C.C.P.; *Holloway v. State*, 780 S.W.2d 787, 793 (Tex.Crim.App.1989). *See also Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *Michigan v. Jackson*, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986). The State may not successfully put him to trial without counsel or jury merely because he voiced no objection to the procedure. *See also* 1.141, V.A.C.C.P. Rather, it must first obtain his permission by express waiver—waiver which is not sufficient in contemplation of the law unless it amounts to the "intentional relinquishment or abandonment of a known right or privilege." *E.g., Janecka v. State*, 739 S.W.2d 813, at 829 (Tex.Crim.App.1987), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See also Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963).

Rights belonging to litigants in our system of justice may be classified, and are almost invariably implemented, in this way. All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong. Many constitutional rights fall into this category. When we say "that even constitutional guarantees can be waived by failure to object properly at trial," we mean that some, not all, constitutional rights may be forfeited. *Gibson v. State*, 516 S.W.2d 406, 409 (Tex.Crim.App.1974). On the other hand, certain, relatively few, rights must be protected by the system's impartial representatives unless expressly waived by the party to whom they belong. Determining which category a right occupies will usually settle the question of procedural default in the context of a particular case.

Of course, the system also includes a number of requirements and prohibitions which are essentially independent of the litigants' wishes. Implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. The clearest cases of nonwaivable, nonforfeitable systemic requirements are laws affecting the jurisdiction of the courts. For example, a person may not be tried in Texas for a felony offense by the County Court at Law, even if he consents. *See generally Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex.Crim.App.1980). A fifteen-year-old child may not be tried as an adult, even with his permission, unless the juvenile court relinquishes jurisdiction of him. *Ex parte Stanley*, 703 S.W.2d 686 (Tex. Crim.App.1986), and cases cited there. Other such requirements and prohibitions, not always jurisdictional, are common in the system. For example, this Court has held that nonjurisdictional principles of due process and separation of powers are such as to render void from its inception conflicting legislation. *Rose v. State*, 752 S.W.2d 529, 552–553 (Tex.Crim.App.1988) (opinion on rehearing).

Thus, our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. In the present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category.

■ "Forfeit" and "procedural default" are synonymous; both refer to the loss of a claim or right for failure to insist upon it by objection, request, motion, or some other behavior calculated to exercise the right in a manner comprehensible to the system's impartial representative, usually the trial judge. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App.1977). Rights which are waivable only, as well as absolute systemic requirements and prohibitions, cannot be made subject to rules of procedural default because, by definition, they are not forfeitable.

■ This arrangement has always worked rather well in the trial and direct appellate review of a case. The trial judge as institutional representative has no duty to enforce forfeitable rights unless request-

ed to do so. *See Rezac v. State,* 782 S.W.2d 869, 870–871 (Tex.Crim.App.1990). Accordingly, an important consequence of a party's failure to petition enforcement of his forfeitable rights in the trial court is that no error attends failure to enforce them and none is presented for review on appeal. Although often called a waiver, it is manifest from the written opinions of this Court that we do not require "voluntary relinquishment of a known right" under such circumstances. The litigant's failure to speak up is quite enough. *See, e.g., Briggs v. State,* 789 S.W.2d 918, 924 (Tex. Crim.App.1990).

Waivable rights, on the other hand, do not vanish so easily. Although a litigant might give them up and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record. *Goffney v. State,* 843 S.W.2d 583, 585 (Tex. Crim.App.1992). He need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them absent an effective waiver by him. As a consequence, failure of the judge to implement them at trial is an error which might be urged on appeal whether or not it was first urged in the trial court.

Finally, absolute requirements and prohibitions, like rights which are waivable only, are to be observed even without partisan request. But unlike waivable rights, they can't lawfully be avoided even with partisan consent. Accordingly, any party entitled to appeal is authorized to complain that an absolute requirement or prohibition was violated, and the merits of his complaint on appeal are not affected by the existence of a waiver or a forfeiture at trial.

Rule 52(a) was meant to reaffirm these basic principles of adversary litigation, not to amend or repeal them. *See Janecka v. State,* 823 S.W.2d 232, 243 n. 2 (Tex.Crim.App.1990) (opinion on rehearing). Since its adoption in 1986, we have regularly applied the rule only in cases of forfeitable trial rights and never to the violation of

fundamental systemic requirements or to the infringement of rights so important that their implementation is mandatory absent an express waiver. *See, e.g., Fuller v. State,* 827 S.W.2d 919, 924 (Tex.Crim.App. 1992) (propriety of allowing challenge for cause to prospective juror); *Dunn v. State,* 819 S.W.2d 510, 523–24 (Tex.Crim.App. 1991) (denial of opening statement to jury); *Spence v. State,* 795 S.W.2d 743, 760–62 (Tex.Crim.App.1990) (admissibility of psychiatric testimony). In context of the whole system, it would be dysfunctional to interpret the broad language of Rule 52(a) to foreclose review of trial defects for which the litigants are not legally responsible. Instead, we think it is a fair reading of the rule's plain language, taken in context, that it complements rather than contradicts other rules and statutes of the system which assign general responsibility for the exercise of elective rights. *See Boykin v. State,* 818 S.W.2d 782 (Tex.Crim. App.1991). Accordingly, we hold that Rule 52(a) applies only to actions of the trial judge concerning which a party forfeits the benefit of a right belonging to him if he does not complain about it at trial. The rule does not apply to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal.

In the instant cause, the Court of Appeals rightly determined that article 1.051(e) is waivable only, inasmuch as the Legislature said so expressly by providing that appointed counsel "may waive the [10 days of] preparation time with the consent of the defendant in writing or on the record in open court." We agree with the lower court that this language clearly does not contemplate a forfeiture of the statutory right from a mere failure to object at trial. But the Court of Appeals erred to hold that an objection is nevertheless required to preserve for appellate review the denial of this right. Appellant's first ground for review is, therefore, sustained.

### III.

To avoid remand for a harm analysis in the event of reversal on discretionary

review, the Court of Appeals, assuming no procedural default, also concluded that the denial of ten days to prepare for trial in the instant cause "made no contribution to the conviction or to the punishment." Tex. R.App.Proc. 81(b)(2). Although Appellant does not complain of this holding in a separate ground for review, his petition to this Court includes argument specifically taking issue with the lower court's harm analysis, and we granted his petition in part to consider the impact of recent analogous case law on this question.

Like Rule 52(a), Rule 81(b)(2) seems more expansive in isolation than it does in context of the criminal justice system as a whole. And, as in the case of Rule 52(a), we have not construed it to reach trial errors of every kind. For example, in *Sodipo v. State*, 815 S.W.2d 551 (Tex.Crim. App.1990), we concluded that denying a request for ten full days to prepare for trial following the amendment of an indictment, in violation of article 28.10(a), Texas Code of Criminal Procedure, is not subject to evaluation for harmlessness under Rule 81(b)(2). Consistent with our general interpretation of the rule, we held that,

> ... provisions such as the ten day requirement found in Art. 28.10(a) cannot be subjected to a harm analysis in any meaningful manner, because the record will not reveal any concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error.

*Sodipo*, 815 S.W.2d at 554 (opinion on original submission). *See also Nunfio v. State*, 808 S.W.2d 482 (Tex.Crim.App.1991) (denial of proper *voir dire* question that prevents intelligent exercise of peremptory challenges not subject to harm analysis under 81(b)(2)).

The Court of Appeals interpreted this holding, not to exempt certain errors from the control of Rule 81(b)(2) altogether, but rather to counsel against a facile application of the rule when the appellate record contains insufficient evidence for a reviewing court confidently to measure the effect of an allegedly harmless error on the outcome of trial. *Marin*, 801 S.W.2d at 947 n.

3. This, however, was a mistaken reading of our case law. Although the assessment of harm always involves a significant factual component, it is clear that our opinions in such cases as *Sodipo* and *Nunfio* did not employ a methodology of evidentiary review to evaluate factfindings of intermediate appellate courts. Instead, our precedents stand for the proposition that certain kinds of error are such "that it is *extremely* difficult to know whether they might have affected the outcome, or the likelihood that they have influenced the outcome is so strong that it is not worth expending the judicial resources necessary to evaluate the effect of the error in particular cases." *Sodipo*, 815 S.W.2d at 551.

Violations of article 1.051(e), assuring appointed counsel ten days to prepare for trial, like violations of article 28.10(a), assuring ten additional days to prepare after the amendment of an indictment, are infractions of this kind. The harmless error rule in general, and Rule 81(b)(2) in particular, was not designed for the hypothetical retrial of defective criminal litigation in the appellate courts. Speculation about the possible effect of ignoring prophylactic procedural rules, let alone disregarding essential features of the adversary process, is always a perverse and inappropriate application of the harmless error doctrine. Indeed, it is precisely because many of these rules define, in the aggregate, what is a tolerably fair trial under our system of criminal justice that their disregard must necessarily undermine confidence in the outcome of trial. Otherwise, we may eventually come to believe that denying an accused even the assistance of counsel is harmless whenever the jury would almost certainly have convicted him in any event.

██ For this reason, the harmless error doctrine is broadly consistent with a rule-governed system of adjudication only when it does not threaten to undermine the very precepts which distinctly specify the fair operation of that system. These precepts include not only fundamental rules of due process and due course of law, but prophylactic rules of procedure designed, in most cases by the Legislature, to impose a uniform requirement where the fairness of a flexible rule is too uncertain.

Specification of a minimum interval for trial preparation is clearly one such rule. As a practical matter, three days might be enough for some lawyers. For others, eleven not enough. But subjecting the matter to determination on a case-by-case basis is unlikely to yield acceptable results because the question is empirically difficult and calls for a value judgment. When the Legislature instead deliberately opts to avoid these difficulties by imposing a uniform rule of ten days preparation time, it is counterproductive for appellate courts retroactively to exempt certain cases from operation of the rule on a basis which the Legislature thought too inscrutable for individual decision in the first place.

■ Our decision to limit application of Rule 81(b)(2) to those trial errors concerning which the record is likely to provide "concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error" thus gives the rule its proper scope in context of our system as a whole. By refusing its application to any error the ultimate consequence of which defies empirical examination on the basis of a typical appellate record alone, we assure that the rule does not exceed its limited purpose to avoid reversal of criminal convictions for clearly unimportant or inconsequential errors.

For the reasons given above, the Court of Appeals erred in applying Rules 52(a) and 81(b)(2) to a violation of article 1.051(e). Its judgment is, therefore, vacated. Because this cause was decided in the lower court by a three-judge panel in which one judge concurred in the result and one judge dissented, and because the concurring opinion suggested a basis for decision different than that presented on discretionary review, this cause is remanded to the Third Court of Appeals for further proceedings consistent with this opinion.

McCORMICK, P.J., and WHITE and OVERSTREET JJ., concur in the result.