

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1591-13

### EX PARTE ERIC MICHAEL HEILMAN, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### JEFFERSON COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., and HERVEY, RICHARDSON, YEARY, and NEWELL, JJ., joined. NEWELL, J., filed a concurring opinion, in which KELLER, P.J., and HERVEY, J., joined. MEYERS, J., filed a dissenting opinion. JOHNSON, J., filed a dissenting opinion. ALCALA, J., filed a dissenting opinion.

### O P I N I O N

Eric Heilman pleaded guilty to misdemeanor tampering with a governmental record after the relevant two-year statute of limitations had expired. In return for Heilman's plea, the State agreed not to pursue indictment for state-jail felony tampering with a governmental record. In an application for a writ of habeas corpus, Heilman challenged the trial court's jurisdiction to accept his plea to the time-barred offense, arguing that his "pure law"

limitations defense is a category-one absolute right under *Marin v. State*.[1]  The habeas court granted relief, and the court of appeals affirmed.  We hold that the right at issue is a category-three forfeitable right and reverse the judgment of the court of appeals.

## I. Facts and Procedural History

In October 2008, Heilman was serving as an officer with the Beaumont Police Department.  Along with another officer and a confidential informant, Heilman took part in a failed undercover narcotics sting targeting a suspected drug dealer.  Although no transaction occurred, when the suspect began to leave, Heilman pursued and arrested him, seizing cash and a large amount of cocaine.  But when Heilman drafted his probable-cause affidavit on October 13, 2008, he failed to mention either the undercover operation or his confidential informant.

When that affidavit's veracity was later challenged, a district attorney pro tem began a grand-jury investigation of Heilman.  During the entire investigation, no indictment, information, or criminal complaint was ever filed against Heilman.  Nevertheless, on December 22, 2010, Heilman pleaded guilty on a misdemeanor information of tampering with a governmental record in return for the State agreeing to (1) forgo indictment on the state-jail felony offense and (2) not oppose early termination of his one-year deferred-adjudication sentence after six months.  Because Heilman's offense of tampering with a

---

[1]  851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997).

governmental record—a Class A misdemeanor—carried only a two-year statute of limitations,[2] Heilman also signed a written waiver stating: "I hereby waive all statute of limitations." Heilman also signed a Deferred Adjudication Order stating: "DEFENSE WAIVES STATUTE LIMITATIONS PER JUDGE FLORES." On June 24, 2011, after the agreed-upon six months, the trial court terminated Heilman's deferred adjudication and dismissed the information.

Heilman subsequently filed an application for a writ of habeas corpus, citing as a collateral consequence his inability to obtain a peace officer's license and alleging an involuntary plea and ineffective assistance of counsel. He also sought findings of fact and conclusions of law that the original trial court lacked jurisdiction under *Phillips v. State*[3] both to accept his December 2010 plea and to sentence him to deferred adjudication after the two-year statute of limitations' expiration in October 2010. The habeas judge vacated the trial court's proceedings against Heilman, concluding it lacked jurisdiction. The court of appeals affirmed, holding that the "charging instrument on its face established that the statute of limitations prohibited the State from prosecuting the defendant."[4]

## II. Analysis

The circumstances of this case force us to reconsider the nature of a statute-of-

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 12.02(a) (West 2012).

[3] 362 S.W.3d 606 (Tex. Crim. App. 2011).

[4] *State v. Heilman*, 413 S.W.3d 503, 505–508 (Tex. App.—Beaumont 2013) (citing *Phillips*, 362 S.W.3d at 617–18).

limitations defense and exactly what right it protects. And although "[o]ften it is better to be consistent than right," we overrule precedent when the reasons for doing so are "weighty enough," including when the precedent was "flawed from the outset" and produces "unjust" results "that place unnecessary burdens on the system."[5] Heilman's reliance on *Phillips v. State* presents us with such a situation.

**A. *Marin*'s Three Categories**

In *Marin v. State*, we constructed a three-part framework to categorize the rights of our criminal-justice system:

1. "absolute requirements and prohibitions";

2. "rights of litigants which must be implemented by the system unless expressly waived"; and

3. "rights of litigants which are to be implemented upon request."[6]

We explained that category-one rights "are to be observed even without partisan request" and cannot "lawfully be avoided even with partisan consent."[7] Category-two rights, however, can be waived by right, but a litigant "is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record."[8] Finally,

---

[5] *See Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex. Crim. App. 2007).

[6] *Marin*, 851 S.W.2d at 279.

[7] *Id.* at 280.

[8] *Id.*

a category-three right can be forfeited by a litigant "for failure to insist upon it by objection, request, motion, or some other behavior calculated to exercise the right in a manner comprehensible to the system's impartial representative, usually the trial judge."[9]

**B. *Phillips v. State*'s distinction between factual and pure-law limitations defenses**

Under *Proctor v. State*, we originally held that a statute-of-limitations defense "is forfeited if not asserted at or before the guilt/innocence stage of trial," thereby placing it in *Marin*'s third category.[10] Yet more recently in *Phillips v. State*, we distinguished between two types of limitations defenses: (1) those that are "based on facts" and (2) those that are "pure law."[11] Whereas the first type merely "gives rise to a limitations factual defense" because it requires factual development beyond the charging instrument, the second appears on the face of the instrument and therefore "gives rise to a statute-of-limitations bar" that constitutes a jurisdictional defect.[12] We held that, while *Proctor*—and therefore *Marin*'s third category—continued to apply to factual limitations defenses, it did not apply to those that are pure law.[13] Therefore, a defendant could forfeit only a factual limitations defense by failing to assert it at trial.[14] But a pure-law limitations defense, as a jurisdictional defect,

---

[9] *Id.* at 279.

[10] *See Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998).

[11] *Phillips*, 362 S.W.3d at 617.

[12] *Id.*

[13] *Id.*

[14] *Id.*

could not be forfeited and could be raised for the first time on appeal or in a collateral proceeding.[15]

## C. Bases of *Phillips*'s distinction

In making that distinction, we relied primarily on the constitutional prohibitions against *ex post facto* laws—found in both the federal and Texas constitutions[16]—and our reasoning in *Ieppert v. State*.[17] In that case, we clarified that the prohibition against *ex post facto* laws is not actually an individual right, but instead "a categorical prohibition directed by the people to their government" that cannot be waived "either individually or collectively."[18] Citing that language, we held in *Phillips* that the "right to be free from *ex post facto* laws or the *ex post facto* application of a law" is a *Marin* category-one absolute right.[19]

Our analysis in *Phillips* then cited the Supreme Court's *Stogner v. California*[20] decision to resolve the collision between the constitutional *ex post facto* prohibition (a category-one absolute right under *Ieppert*) and a statute-of-limitations defense (originally a

---

[15]  *Id.*

[16]  U.S. CONST. art. I, § 10 cl. 1 ("No state shall . . . pass any . . . *ex post facto* Law."); TEX. CONST. art. I, § 16 ("No . . . *ex post facto* law . . . shall be made.").

[17]  908 S.W.2d 217 (Tex. Crim. App. 1995).

[18]  *Id.* at 220.

[19]  *Phillips*, 362 S.W.3d at 611–12.

[20]  539 U.S. 607 (2003).

category-three forfeitable right under *Proctor*).[21]  In *Stogner*, the Supreme Court held that a state statute allowing time-barred prosecutions for sex-related child abuse if "begun within one year of the victim's report" violated the *Ex Post Facto* Clause.[22]  We noted the Supreme Court's invocation of the assurances the State provides through a statute of limitations; namely that one "has become safe from its pursuit," and that the State will "play by its own rules" and give "fair warning" to preserve exculpatory evidence.[23]  Citing those assurances, we held in *Phillips* that a "facially retroactive law that revived a previously time-barred offense violated the *Ex Post Facto* Clause," thus making a pure-law limitations defense a category-one right through application of the *Ex Post Facto* Clause.[24]  Therefore, once the statute of limitations on Phillips's offenses expired, "from that day forward, prosecution of all twelve counts was forever and absolutely barred."[25]

### D. Our decision to overrule *Phillips v. State*

We now conclude that *Phillips*'s distinction between factual and pure-law limitations defenses was in error, at least in circumstances lacking any legislative *ex post facto* violation. Only the legislature can violate either the federal or state *Ex Post Facto* Clause because—as

---

[21]  *Phillips*, 362 S.W.3d at 614.

[22]  *Stogner*, 539 U.S. at 609 (citing CAL. PENAL CODE ANN. § 803(g) (West Supp. 2003)).

[23]  *Phillips*, 362 S.W.3d at 614 (citing *Stogner*, 539 U.S. at 611).

[24]  *See id.*

[25]  *Id.* at 616.

we held in *Ortiz v. State* and now reaffirm—both are "directed at the Legislature, not the courts."[26]   Indeed, as the seminal case on the *Ex Post Facto* Clause—*Calder v. Bull*—declared, the "plain and obvious meaning and intention of the prohibition" is that "the Legislatures of the several states, shall not pass laws, after a fact done by a subject, or citizen, which shall have relation to such fact, and shall punish him for having done it."[27]

Our *Ortiz* holding also sought to limit the effect of *Ieppert*, the case on which so much of *Phillips*'s reasoning relied.  We explained that in *Ieppert* "we did not appear to appreciate the distinction" between the legislature and the courts due to *Bouie v. City of Columbia*'s due process prohibition against the judiciary "achieving, through construction of a statute, the exact same consequence that would be prohibited by the *ex post facto* clause if the Legislature had so acted."[28]  We noted that the Supreme Court in *Rogers v. Tennessee* had since declared that reasoning dicta—clarifying that *Bouie* turned only on a due process violation—and held the federal *Ex Post Facto* Clause inapplicable to the courts, citing the "important institutional and contextual differences between legislating, on the one hand, and

---

[26] *Ortiz v. State*, 93 S.W.3d 79, 91 (Tex. Crim. App. 2002).  *See also Phillips*, 362 S.W.3d at 619 (Keller, P.J., dissenting).

[27] *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798).  *See also Marks v. United States*, 430 U.S. 188, 191 (1977) ("The Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.") (citations omitted).

[28] *Ortiz*, 93 S.W.3d at 91 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964)).

common law decisionmaking, on the other."[29]

In concluding its analysis in *Stogner*, the Supreme Court struck down California's statute because it "retroactively withdraws a complete defense to prosecution after it has already attached, and it does so in a manner that allows the State to withdraw this defense at will and with respect to individuals already identified."[30] But here, the State could not pursue the time-barred offense "at will." There was no statute like California's enabling it to do so. Because there was no legislative act, there was no *ex post facto* violation.[31] And although *Stogner* clarified the nature of a statute-of-limitations defense operating in conjunction with a violation of the *Ex Post Facto* Clause, it provided no guidance as to whether a statute-of-limitations defense standing alone must be forfeitable, waivable, or absolute that would direct our *Marin* analysis and require us to stray from *Proctor*.

But we need not hold that the legislature acting only by and through itself can violate the *Ex Post Facto* Clause.[32] In *Peugh v. United States*, a recent Supreme Court decision that we did not have the benefit of reviewing when we decided *Phillips*, the Court held that a trial

---

[29] *Id.* (citing *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001)).

[30] *Stogner*, 539 U.S. at 632.

[31] *Ortiz*, 93 S.W.3d at 91. *See also Phillips*, 362 S.W.3d at 624 (Keller, P.J., dissenting) ("[T]he savings provision prevented the 1997 amendments from applying to appellant's sex offenses that became barred in 1993. The parties and the trial court were simply mistaken in believing that the 1997 statute applied. The legislature did not pass an *ex post facto* law.").

[32] *See, e.g.*, *Peugh v. United States*, 133 S. Ct. 2072, 2085 (2013) (plurality stating that "the coverage of the *Ex Post Facto* Clause is not limited to legislative acts").

judge's application of the Federal Sentencing Guidelines in effect at the time of a defendant's trial instead of those in effect at the time of the defendant's offenses violated the *Ex Post Facto* Clause.[33] In rejecting the government's argument that the guidelines were just one among a number of sources that a district court could use during sentencing, no different than a "policy paper," the Supreme Court noted the statutory consequences from either following or deviating from the guidelines.[34] A district court had to consult the guidelines to avoid "reversible procedural error" and risked an abuse-of-discretion finding on appeal if it deviated too far.[35] But if a district court followed the guidelines, a court of appeals could presume the sentence reasonable.[36] The Court also cited *Garner v. Jones*, which recognized that a state parole board could—but refused to find that it did—violate the *Ex Post Facto* Clause by changing its rules.[37]

But at no point in *Peugh* did the Supreme Court overturn—or even reference—its earlier refusal to extend the scope of the *Ex Post Facto* Clause to the courts in *Rogers v. Tennessee*, which solidifies our holding that, while the clause's scope can extend to executive agencies exercising delegated legislative power, it still does not extend to courts exercising

---

[33] *Id.* at 2088.

[34] *Id.* at 2087 (referencing various provisions of 18 U.S.C. § 3553).

[35] *Id.*

[36] *Id.*

[37] *Id.* at 2085 (citing *Garner v. Jones* 529 U.S. 244, 247, 257 (2000)).

their inherent power to accept a plea bargain.[38]  Thus the Supreme Court's reasoning in *Peugh* reaffirms our holding in *Ortiz* that the *Ex Post Facto* Clause is "directed at the Legislature, not the courts."[39]

Therefore, in assessing a claim based on the *Ex Post Facto* Clause, we look beyond the actor that is directly committing the alleged violation for some legislative origin of the alleged violation—such as the enabling statutes of either the United States Sentencing Commission in *Peugh*[40] or the state parole board in *Garner*.[41]  A legislature cannot escape the strictures of either the Texas or federal *Ex Post Facto* Clause by mere delegation.  But a defendant must be able to point to a legislative origin of the alleged violation, and here there was none.  Instead, the trial judge's acceptance of Heilman's time-barred plea originated from Heilman's plea negotiations with the State, along with his multiple waivers of any limitations defense.

And for Heilman's plea agreement to stand, we must first overturn *Phillips v. State*. In *Phillips*, we reasoned that once the charging instrument showed that the statute of

---

[38]  *See Rogers*, 532 U.S. at 460 ("The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process thus would circumvent the clear constitutional text. It would also evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.").

[39]  *See Ortiz*, 93 S.W.3d at 91.

[40]  *See Peugh*, 133 S. Ct. at 2079.

[41]  *See Garner*, 529 U.S. at 247.

limitations on the twelve counts of sexual offenses leveled against Phillips had expired, "from that day forward, prosecution of all twelve counts was forever and absolutely barred."[42] *Phillips*'s reliance on a legally significant distinction between pure-law and factual limitations defenses determined that result and caused us to stray from *Proctor*.[43] It was not dicta.[44] It was an analytical step to reach the result. Therefore, because the information against Heilman showed that the statute of limitations on the misdemeanor offense to which he pleaded had run two months before his plea, prosecution on that offense was already "forever and absolutely barred" under *Phillips*.[45]

Although prosecution of the state-jail felony offense would still have been possible at that point, under *Phillips* that would not have revived prosecution of the misdemeanor offense. When we analyze rights under our *Marin* framework, we focus on the nature of the right at issue—not the circumstances under which it was raised.[46] Therefore, our analysis here must turn on the nature of the statute-of-limitations defense itself, not on the claim that in hindsight the record just happens to show that a hypothetical prosecutor in these particular

---

[42] *Phillips*, 362 S.W.3d at 616.

[43] *Id.* at 617–18.

[44] *Cf. post*, op. at 8–10 (Alcala, J., dissenting).

[45] *See Phillips*, 362 S.W.3d at 616–17.

[46] *Marin*, 851 S.W.2d at 279. *See also Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014) ("In *Marin*, we held that the general preservation requirement's application turns on the nature of the right allegedly infringed.").

circumstances could have charged Heilman with the non-barred state-jail felony offense at the time of his plea. It would be easy to misinterpret a statute-of-limitations defense as a uniquely fundamental right, given that when it is properly raised, it leads to only one result: dismissal. But its true nature—a mere legislative "act of grace"[47]—is modest, especially when compared to weightier, constitutionally based rights that we have nonetheless deemed forfeitable.[48]

This opinion, however, should not be read to grant unfettered powers to the judicial branch. Courts can still violate the Due Process Clause of the Fifth Amendment through an "unforeseeable judicial enlargement of a criminal statute, applied retroactively."[49] Although this limitation is often regarded as the judicial cognate of the *ex post facto* prohibition,[50] the Supreme Court has made clear that the two are not co-extensive.[51] Instead, the due process

---

[47] *Proctor*, 967 S.W.2d at 843. *See also Phillips*, 362 S.W.3d at 626 (Keller, P.J., dissenting).

[48] *See, e.g., Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005) (holding that a defendant forfeited his Confrontation Clause claim by failing to properly preserve it at trial). *See also Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) ("[O]ur prior decisions make clear that numerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved.").

[49] *See Marks*, 430 U.S. at 192 (citing *Bouie*, 378 U.S. at 353–54).

[50] *See id.* at 191–92.

[51] *Rogers*, 532 U.S. at 459 ("Contrary to petitioner's suggestion, nowhere in [*Bouie*] did we go so far as to incorporate jot-for-jot the specific categories of *Calder* into due process limitations on the retroactive application of judicial decisions.").

limitation—rooted in the "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime"[52]—protects against a "judicial enlargement" of a statute, which is not alleged here.[53]

### E. The importance of protecting good-faith, arm's length plea agreements

Our decision today is further bolstered by the unintended effect that the distinction between factual and pure-law limitations defenses has had on the sanctity and finality of plea agreements. In *Proctor*, we advanced several practical reasons for treating a limitations defense as forfeitable, arguing that the defense has "little to do with the truth-finding function" of our criminal-justice system and that a defendant might waive the defense "to gain time for plea bargaining" or "to vindicate his good name."[54] But most significantly, the *Phillips* dissent warned of the exact circumstance we now address, adding to *Proctor*'s list "the possibility that foregoing a limitations defense could be part of a plea agreement involving multiple charges."[55]

It is this unintended consequence of our *Phillips* holding that so concerns us and spurs our decision to overrule it. Courts have long recognized the important role plea agreements

---

[52] *See id.* at 457 (citing *Bouie*, 378 U.S. at 350).

[53] *See Marks*, 430 U.S. at 192.

[54] *Proctor*, 967 S.W.2d at 844. *See also Phillips*, 362 S.W.3d at 624–25 (Keller, P.J., dissenting).

[55] *Phillips*, 362 S.W.3d at 625 n.58 (Keller, P.J., dissenting).

play in our criminal-justice system.[56] The agreement itself "may contain a wide variety of stipulations and conditions that allow the state to tailor conditions in order to reach agreement with the defendant."[57] Allowing for such wide-ranging plea agreements benefits not only the defendant and the State, who are free to explore a full array of stipulations and conditions in plea negotiations, but also the courts, whose dockets are thinned by parties ready and willing to settle.

But if we adhere to *Phillips*, we invite the very set of circumstances that we now address. Generally, a defendant who accepts the benefits of a plea agreement is estopped from challenging its validity.[58] Yet estoppel does not apply when the trial court lacked jurisdiction.[59] Therefore, because *Phillips* held that a pure-law limitations defense is an attack on a court's jurisdiction,[60] a defendant could "reap the benefits of an illegal sentence, which is lighter than what the legal sentence would have been, and then turn around and attack the legality of the illegal, lighter sentence when it serves his interest to do so," as Heilman now tries to do.[61] As part of an arm's length plea agreement made in good faith,

---

[56] *See, e.g., Brady v. United States*, 397 U.S. 742, 752 (1970) (cataloguing the advantages of a plea agreement to both a defendant and the prosecution).

[57] *Moore v. State*, 295 S.W.3d 329, 331–32 (Tex. Crim. App. 2009).

[58] *Rhodes v. State*, 240 S.W.3d 882, 891 (Tex. Crim. App. 2007).

[59] *Id.*

[60] *Phillips*, 362 S.W.3d at 617.

[61] *See Rhodes*, 240 S.W.3d at 891–92 (citations omitted) (seeking to avoid exactly such a result).

Heilman expressly waived his limitations defense to a time-barred misdemeanor offense in two written and signed documents so as to plead guilty and avoid facing a state-jail felony indictment. But now, after serving the six months of his deferred-adjudication sentence, he seeks the judiciary's assistance in reneging. Our decision today addresses this inequity.

And if we addressed this inequity by merely focusing on Heilman's multiple waivers without first overturning *Phillips*, we would unnecessarily complicate how we analyze the statute-of-limitations defense under *Marin*.[62] Indeed, doing so would again allow for the categorization of the defense to depend not on its nature, as *Marin* requires, but on the circumstances under which it was raised.[63]

### F. Heilman's Complicity in the Circumstances Raising His Limitations Defense

Courts also often bar an otherwise valid limitations defense when, as here, the defendant attempts to present it with unclean hands by creating the very circumstances for its application. For example, in *Spaziano v. Florida*, the Supreme Court upheld a judge's rejection of a defendant's requested lesser-included instruction when the defendant refused to also waive his limitations defense to the lesser-included offense.[64] The Court explained

---

[62] *See Proctor*, 967 S.W.2d at 844 ("We also conclude that placing limitations in the second *Marin* category is equally inappropriate. However important the statute of limitations might be to a defendant in a given case, the statute can hardly be deemed 'fundamental to the proper functioning of our adjudicatory system.' Indeed, at common law there was no limitation as to the time within which offenses could be prosecuted.").

[63] *See Grado*, 445 S.W.3d at 739.

[64] *Spaziano v. Florida*, 468 U.S. 447, 456–57 (1984), *abrogated on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

that to hold otherwise would require "that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, [when] in reality there is no choice."[65] The Court instead gave Spaziano the "choice between having the benefit of the lesser included offense instruction or asserting the statute of limitations on the lesser included offenses."[66]

Citing *Spaziano*, in *State v. Yount*, we found a defendant estopped from attacking his conviction for a time-barred lesser-included offense when the defendant himself requested the lesser-included instruction.[67] When the jury convicted him of only the lesser-included offense, Yount raised his limitations defense and moved to set aside the judgment.[68] We reversed the trial court's granting of that motion, concluding that Yount could not both request the benefits of the instruction and then attack his conviction based on the instruction.[69]

Heilman faced a similar choice. He could retain his limitations defense to the misdemeanor offense and risk a state-jail felony indictment, or forfeit (or in this case waive) his limitations defense and plead to the misdemeanor offense. Heilman chose the latter and

---

[65] *Id*. at 456.

[66] *Id*.

[67] *State v. Yount*, 853 S.W.2d 6, 10 (Tex. Crim. App. 1993).

[68] *Id*. at 7.

[69] *Id*. at 9–10.

cannot now use that choice to attack the trial court's acceptance of his plea and imposition of sentence. He may regret the choice he made, but he must accept its consequences.

Furthermore, *Spaziano* and *Yount* make one thing clear: a statute-of-limitations defense lacking any *ex post facto* component does not attack the jurisdiction of the trial court.[70] If it did, Spaziano would have retained the right to attack the trial court's jurisdiction if he were found guilty of only the time-barred lesser-included offense. Similarly, if it did, once the jury had found Yount guilty of only the lesser-included offense, it in effect would have found that the trial court lacked jurisdiction and no conviction would have been possible, regardless of who requested the lesser-included instruction. Instead, a limitations defense standing alone is merely a procedural "act of grace" by the legislature that can be forfeited.[71]

### III. Conclusion

Heilman's attempt to renege on his guilty plea after accepting its benefits exposes the unintended consequences of our prior holding in *Phillips v. State*. To ensure the sanctity and finality of plea agreements reached in good faith and at arm's length, we will no longer unquestioningly distinguish between factual and pure-law limitations defenses. Instead, in circumstances lacking any legislative *ex post facto* violation—and especially when that

---

[70] *Id.* at 8 ("[A]n indictment which charges the commission of an offense barred by limitations still confers jurisdiction upon the trial court, such that the defendant must bring the defect to the attention of the trial court in order to preserve any error.").

[71] *Proctor*, 967 S.W.2d at 843. *See also Phillips*, 362 S.W.3d at 626 (Keller, P.J., dissenting).

occurs in the context of a good-faith, arm's length plea agreement—both are *Marin* category-three forfeitable rights, as under *Proctor v. State*. Therefore, because there was no *ex post facto* violation, the trial court properly exercised its jurisdiction to accept Heilman's plea and Heilman had every right to forfeit (or in this case waive) his limitations defense as part of that plea. We reverse the holdings of the habeas court and the court of appeals, and we remand the case to the court of appeals to assess Heilman's other claims.

DELIVERED: March 18, 2015

PUBLISH