

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00100-CR

EX PARTE ANDRE DEROSIER

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2002-0330-E

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant, Andre Derosier, appeals from the trial court's order denying him relief on his application for writ of habeas corpus. In one point, Derosier argues that because the trial court lacked subject-matter jurisdiction over the plea he entered regarding the underlying offense that serves as the basis for his requested relief, the trial court abused its discretion by denying his application. We will reverse and remand for further proceedings consistent with this opinion.

---

[1]See Tex. R. App. P. 47.4.

## II. BACKGROUND

The State indicted Derosier on March 7, 2002, for six counts of indecency with a child by contact. On the second day of his jury trial, November 13, 2002, Derosier entered into a plea agreement with the State wherein he pleaded no contest to the misdemeanor offense of terroristic threat[2] in exchange for the State dismissing the indecency charges. Pursuant to the plea bargain, Derosier received one day in jail with one day's credit. Thus, Derosier did not serve any additional time in jail nor any type of community supervision. Derosier claims, however, that he suffers the collateral consequences from this misdemeanor conviction of being unable to procure gainful employment. *See Tatum v. State*, 846 S.W.2d 324, 327 (Tex. Crim. App. 1993) ("[I]f a misdemeanor judgment is void, and its existence may have detrimental collateral consequences in some future proceeding, it may be collaterally attacked, whether or not a term of probation was successfully served out.").

According to the trial court's findings of facts in this habeas proceeding, prior to his plea, the trial court properly admonished Derosier concerning his rights and the consequences of his plea. Derosier and his attorney signed the plea agreement along with other paperwork, including a waiver of his right to a jury and the "Court's Admonition of Statutory and Constitutional Rights and

---

[2]One of the trial court's findings reads that the plea agreement reached by Derosier and the State "appears to have originally been for the offense of 'assault,' and that offense was crossed out and 'terroristic threat' was added."

Defendant's Acknowledgment."  Derosier did not object to the trial court's jurisdiction prior to entering his plea.  Twelve years after entering his plea, Derosier filed in the trial court this original application for writ of habeas corpus, alleging that the trial court lacked subject-matter jurisdiction over the misdemeanor offense of terroristic threat.  The trial court denied relief.

In the trial court's conclusions of law relating to its denial, the trial court concluded that even though the plea-bargained judgment was "void," Derosier was not entitled to collaterally attack the judgment because he had "enjoyed the benefits of an agreed judgment prescribing a too-lenient punishment."  In support of its decision, the trial court cited to numerous Texas Court of Criminal Appeals decisions that the trial court interpreted as standing for the proposition that "there are instances where judgments that are void may not be attacked through a writ." Ultimately, the trial court concluded that Derosier was "estopped from complaining about the plea agreement that he agreed to, and received the benefit of the bargain from."  This appeal followed.

### III. DISCUSSION

In one point, Derosier argues that the trial court abused its discretion by denying his application for writ of habeas corpus because the trial court lacked subject-matter jurisdiction over the misdemeanor charge he pleaded no contest to, terroristic threat, and thus his plea-bargained-for judgment is void and the trial court should have granted his application.  The State does not dispute that the trial court lacked subject-matter jurisdiction over the misdemeanor charge that

3

Derosier pleaded no contest to.[3]  Instead, the State asserts numerous estoppel theories as to why the trial court did not abuse its discretion by denying Derosier's application.

### A.  Standard of Review and Jurisdiction

We review a trial court's denial of the relief requested in an application for a writ of habeas corpus under an abuse of discretion standard.  *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1052 (2006); *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd); *Ex parte Karlson*, 282 S.W.3d 118, 127 (Tex. App.—Fort Worth 2009, pets. ref'd).  This means that we view the record in the light most favorable to the trial court's ruling and afford great deference to its findings and conclusions, especially when they involve determinations of credibility and demeanor.  *Mello*, 355 S.W.3d at 832.  A trial court, however, has no discretion in determining what the law is or applying the law to the facts.  *In re Hinterlong*, 109 S.W.3d 611, 621 (Tex. App.—Fort Worth 2003, orig. proceeding [mand. denied]) (op. on reh'g).

It is axiomatic that subject-matter jurisdiction cannot be conferred by agreement of the parties; jurisdiction must be vested in a court by constitution or statute.  *See State v. Roberts*, 940 S.W.2d 655, 657 (Tex. Crim. App. 1996)

---

[3] *See Puente v. State*, 71 S.W.3d 340, 343 (Tex. Crim. App. 2002) ("A district court has jurisdiction over felony offenses. It does not have original jurisdiction over misdemeanor charges, except those involving official misconduct."). (footnotes omitted) The State, the trial court, and Derosier all agree that the trial court lacked subject-matter jurisdiction over the plea-bargained-for judgment.

4

("[S]ubject matter jurisdiction cannot be conferred by agreement of the parties; jurisdiction must be vested in a court by constitution or statute."), *overruled on other grounds by State v. Medrano*, 67 S.W.3d 892, 894 (Tex. Crim. App. 2002).

### B.   *Rhodes*, *Murray*, and Illegal Sentences

In support of its argument that Derosier should be estopped from complaining about his plea-bargained judgment, the State, like the trial court did in its conclusions of law, relies in part on the court of criminal appeals's decisions in *Rhodes v. State*, 240 S.W.3d 882 (Tex. Crim. App. 2007) and *Murray v. State*, 302 S.W.3d 874 (Tex. Crim. App. 2009).

In *Rhodes*, the court faced the question of whether a defendant who entered a plea agreement involving multiple charges and corresponding sentences could later argue that his plea was void because under the code of criminal procedure, the trial court was not authorized to assess his sentences to run concurrently. 240 S.W.3d at 890. In short, Rhodes "received a judgment that was illegally lenient by having his sentence run concurrently instead of consecutively." *Id.* The *Rhodes* court held that Rhodes was estopped from attacking this judgment through a writ of habeas corpus because "he agreed to the concurrent sentencing provision, then through his own conduct [of not directly appealing the decision] he helped procure and benefit from the illegality." *Id.* But *Rhodes* is inapplicable to the facts of this case.

In *Rhodes*, there was no question that the trial court possessed subject-matter jurisdiction over the judgment resulting from Rhodes's plea. The trial

5

court's failure was that it had entered an "illegally lenient sentence." *Id.* at 890.

An illegal sentence is a sentence that is "outside the maximum or minimum range of punishment . . ., unauthorized by law[,] and therefore illegal." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). Illegal sentences are curable defects and do not involve a court's jurisdiction. *Rhodes*, 240 S.W.3d at 888. Indeed, as the court of criminal appeals has stated, "There has never been anything in Texas law that prevented *any* court with *jurisdiction* over a criminal case from noticing and correcting an illegal sentence." *Mizell*, 119 S.W.3d at 806 (second emphasis added). Moreover, the *Rhodes* court specifically stated that the only exceptions to the estoppel or "invited error" doctrine that applied to Rhodes's judgment were "challenges to the subject-matter jurisdiction of the court rendering the judgment." *Rhodes*, 240 S.W.3d at 891. In summary, *Rhodes* did not involve the trial court's subject-matter jurisdiction, and there is nothing in *Rhodes* to suggest that estoppel-like doctrines apply when a court does not have subject-matter jurisdiction over a bargained-for judgment.

*Murray* also involved an "illegally lenient sentence," but unlike the defendant in *Rhodes*, Murray was not barred from challenging the illegal sentence because he had procedurally perfected his challenge to the judgment when he "assigned a reason" for withdrawing his plea prior to the entry of judgment. *Murray*, 302 S.W.3d at 883. In coming to its conclusion that the State's estoppel claims failed, the *Murray* court assumed, "without deciding, that the State [was] not barred by a subject[-]matter jurisdiction defect." *Id.* at 882.

6

Like in *Rhodes*, there is nothing in *Murray* to suggest that estoppel-like doctrines apply when a court lacks subject-matter jurisdiction over the bargained-for judgment.

Accordingly, the trial court and the State's reliance upon *Rhodes* and *Murray* is misplaced. This case does not involve an illegal sentence; it involves a judgment that is void because the trial court lacked jurisdiction to enter judgment. *See Nix v. State*, 65 S.W.3d 664, 667 (Tex. Crim. App. 2001) ("The void judgment exception recognizes that there are some rare situations in which a trial court's judgment is accorded no respect due to a complete lack of power to render the judgment in question."); *see also In re Leonard*, 402 S.W.3d 421, 423 (Tex. App.—Fort Worth 2013, orig. proceeding [mand. conditionally granted]) ("Estoppel, however, cannot apply if the trial court had no subject[-]matter jurisdiction.").

### C.    *Ex parte Sledge*

In its conclusions of law, the trial court also concluded that the "Court of Criminal Appeals has held that there are instances where judgments that are void may not be attacked through a writ." *Ex parte Sledge*, 391 S.W.3d 104, 107–08 (Tex. Crim. App. 2013). The State relies on a similar premise in its briefing to this court. But *Sledge* is also not applicable to the facts of this case. In *Sledge*, the court of criminal appeals held that a writ applicant's claim that the trial court's order revoking his deferred adjudication community supervision was void for lack of subject-matter jurisdiction was not cognizable on successive

7

habeas corpus review. *Id.* The *Sledge* court reasoned that because the claim did not fit within any of the statutory exceptions to the prohibition against successive writs and because the applicant had not brought his jurisdictional claim in his original post-conviction application for writ of habeas corpus, the court of criminal appeals itself was statutorily barred from reviewing the claim. *Id.*

The *Sledge* court, however, discussed at length that "jurisdictional claims are cognizable in post-conviction habeas corpus proceedings." *Id*. at 108. Specifically to claims regarding a convicting court's jurisdiction, the *Sledge* court stated,

> It is, of course, axiomatic in our case law that review of jurisdictional claims are cognizable in post-conviction habeas corpus proceedings. Moreover, we have recognized them to be cognizable without regard to ordinary notions of procedural default—essentially because it is simply not optional with the parties to agree to confer subject[-]matter jurisdiction on a convicting court where that jurisdiction is lacking. Therefore, unless and until such time as the Legislature might say otherwise, in exercise of its constitutional authority to regulate post-conviction writ procedure, a meritorious claim of truly jurisdictional dimension will "always" be subject to vindication in an original post-conviction application for writ of habeas corpus. We do not mean here to say otherwise.

*Id.* (footnotes omitted). Thus, the trial court's reliance, and the State's reliance now, on *Sledge* is misplaced because it is not disputed in this case that Derosier brought his subject-matter jurisdictional claim in his original post-conviction application for writ of habeas corpus.

8

**D.** *Ex parte Heilman*

One of the cases heavily relied upon by the State is *Ex parte Heilman*. 456 S.W.3d 159 (Tex. Crim. App. 2015). In *Heilman*, the court of criminal appeals held that it would no longer recognize a distinction between limitations defenses that are "based in facts" versus those that are "pure law." *Id.* at 161–62. Prior to *Heilman*, Texas jurisprudence treated limitation defenses based on facts as *Marin* category-three rights and limitation defenses based on pure law as *Marin* category-one rights. *See id.*; *see also Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). The appreciable difference is that *Marin* category-three rights are subject to forfeiture, and *Marin* category-one rights are "absolute requirements." *Marin*, 851 S.W.2d at 279. One such *Marin* category-one right is subject-matter jurisdiction. *Id.* Until *Heilman*, limitation defenses based on pure law were treated as jurisdictional issues. 456 S.W.3d at 162.

The State asks this court to interpret *Heilman* as standing for the proposition that "protecting good-faith, arm's length plea agreements" trumps subject-matter jurisdiction. But *Heilman* does not suggest anything of the sort. *Heilman* stands for the proposition that there is no *ex post facto* violation by treating all limitation defenses as "Marin category-three forfeitable rights." *Id.* at 169.

*Heilman* actually works against the State's position in this case. *Heilman* explicitly states that "estoppel does not apply when [a] court lack[s] jurisdiction."

*Id.* at 167. Further, *Heilman* explains that a "limitations defense standing alone is merely a procedural 'act of grace' by the legislature that can be forfeited," but when a "trial court lack[s] jurisdiction . . . no conviction [is] possible." *Id.* at 168. We conclude that *Heilman* does not support the trial court's denial of Derosier's application, nor does it support the State's position that Derosier is estopped from bringing his application.

### E.    Precedent

The State also relies on a myriad of cases, including fragments from concurrences and dissents from court of criminal appeals's opinions as well as opinions from other state courts, and asks this court to read the tea leaves regarding how the Texas Court of Criminal Appeals will, in the future, address the issue of when an applicant benefits from an agreed-to judgment but later challenges the convicting court's subject-matter jurisdiction in a writ of habeas corpus. *See Hall v. State*, 225 S.W.3d 524, 537–38 (Tex. Crim. App. 2007) (Keller, P.J., dissenting) (discussing the doctrine of "beneficial acquiescence"); *see also People v. Vera*, 122 Cal. App. 4th 970, 982–83 (2004) (holding defendant who pleaded no contest to felony battery estopped from challenging trial court's authority to strike five-year enhancements where court struck the enhancements pursuant to plea agreement). In short, the State asks this court to preemptively overrule the Texas Court of Criminal Appeals's longstanding holding that "it is simply not optional with the parties to agree to confer subject-matter jurisdiction on a convicting court where that jurisdiction is lacking. *Sledge*,

10

391 S.W.3d at 108. We decline the State's invitation to usurp the role of the Texas Court of Criminal Appeals. *See Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004) (op. on reh'g) (stating that this court "is bound by the precedent of the Texas Court of Criminal Appeals and has no authority to disregard or overrule" it), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007).

### F. The State's Remaining Arguments

In the remainder of its briefing, the State argues that Derosier was not harmed by his plea, or that he otherwise waived his complaint about the trial court's judgment, and thus this court should affirm the trial court's denial of his application. But subject-matter jurisdiction is not a question of harm; rather, it is a question regarding a trial court's ability to act. *Roberts*, 940 S.W.2d at 657. It is not a question of the parties' conduct that can confer upon a court an authority that does not exist; instead, a lack of subject-matter jurisdiction concerns a court's complete lack of power to render the judgment in question. *See Nix*, 65 S.W.3d at 668 ("A void judgment is a 'nullity' and can be attacked at any time."). As the court of criminal appeals stated in *Sledge*, "a meritorious claim of truly jurisdictional dimension will 'always' be subject to vindication in an original post-conviction application for writ of habeas corpus." *Sledge*, 391 S.W.3d at 108 (*citing Ex parte Davis*, 947 S.W.2d 216, 223–24 (Tex. Crim. App. 1996)). This is the very type of claim that Derosier has brought, and the State and trial court both agree that the trial court lacked jurisdiction to enter judgment predicated on a charge of terroristic threat.

11

## IV. Conclusion

We hold that the trial court abused its discretion by denying Derosier's application for writ of habeas corpus because the trial court did not have subject-matter jurisdiction over the agreed-to charge and therefore the judgment is void. Accordingly, we sustain Derosier's sole point, we reverse the trial court's judgment denying Derosier's application, and we remand this case back to that court for proceedings consistent with this opinion.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 29, 2015