

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00052-CR

JEREMY AUSTIN CARROLL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 411th District Court
Trinity County, Texas
Trial Court No. 09954

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Jeremy Austin Carroll was charged, in Trinity County,[1] with one count of improper relationship between educator and student and one count of indecency with a child. Pursuant to a plea agreement on each count, Carroll was placed on deferred adjudication community supervision for a period of five years. Carroll appeals the trial court's subsequent revocation of community supervision, adjudication of guilt, and resulting sentence of twenty years' confinement in prison on each count.[2] Carroll contends the trial court erred (1) when it revoked his community supervision "based on a term which was not capable of an objective definition" and (2) when it allowed into evidence an unqualified expert's opinion. Because Carroll did not present either of these issues to the trial court, he has waived them for our review. We affirm the judgment of the trial court.

## I.     Background

On March 26, 2013, Carroll was placed on deferred adjudication community supervision for the offenses of improper relationship between educator and student and indecency with a child. As one of the conditions of his community supervision, Carroll was prohibited from "hav[ing] access to the Internet through any manner or method." The trial court's order stated, "[Carroll] may not view, receive, download, transmit, or possess, pornographic material on any computer," and he was not allowed to "possess pornographic software images or material on any hard drive,

---

[1]Originally appealed to the Twelfth Court of Appeals in Tyler, Carroll's case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Because this is a transfer case, we apply the precedent of the Tyler Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2]The trial court ordered Carroll's sentences to run concurrently.

flopping [sic] disk, Disk, Diskette or magnetic tape." The order also stated, "[Carroll is] not to work, frequent, or patronize places where pornographic materials are sold. [Carroll] may not own or possess pornographic materials or frequent sexually oriented establishments beginning March 26, 2013."[3]

On November 16, 2017, the State filed a motion to adjudicate guilt, maintaining that Carroll violated the conditions that he "not work, frequent, or patronize places where pornographic materials [were] sold" and that he violated the condition that he not be in possession of pornographic materials. The State alleged that Carroll admitted to possessing pornographic photographs on September 26, 2017. On December 6, 2017, the State filed its first amended motion to adjudicate guilt. In its amended motion, the State again asserted the allegation contained in its November 2017 motion to adjudicate guilt. The State supplemented its motion, however, by alleging that Carroll admitted to "possess[ing] pornographic images of a female and himself" and that he had "accessed the internet through his phone and other unknown devices multiple times."

---

[3]On July 30, 2013, the trial court modified Carroll's conditions, adding that he "must remain within the limits of the State of Texas, unless given permission to leave by the Court or Community Supervision Officer." In its order, the trial court reminded Carroll that the balance of his community supervision conditions remained in effect. On October 1, 2013, the trial court deleted the condition that Carroll have no contact with minors under the age of seventeen unless specifically permitted by the court, and substituted, "You are to have no unsupervised contact with any minor under the age of seventeen (17) beginning March 26, 2013 for any reason except as specifically permitted by the Court." On October 15, 2013, Carroll filed a motion to modify the conditions of his community supervision, asking the trial court to allow him to have access to the internet at work "to check his weekly schedule and to view his paystubs and hours." The trial court denied Carroll's request. On March 21, 2016, Carroll filed a second motion to modify conditions of community supervision, explaining to the trial court that Carroll and his wife had purchased a home which was located within 1,000 feet of a park where children commonly gathered. Carroll had been previously prohibited from being within 1,000 feet of places where children are likely to be located. On May 5, 2016, the trial court modified Carroll's conditions of community supervision, allowing him to reside at the new address, however, with that single exception, the prohibition that he not go within 1,000 feet of children's gathering places remained in effect.

3

On January 23, 2018, the trial court held a hearing on the State's amended motion to adjudicate. Carroll pled not true to the State's allegations against him. After hearing from several witnesses, the trial court found the State's allegations to be true, revoked Carroll's unadjudicated community supervision and found him guilty of the underlying charges. The trial court then sentenced Carroll to twenty years' confinement in prison, which sentences were ordered to run concurrently. This appeal followed.

## II. Discussion

Carroll contends the trial court erred when it revoked his deferred adjudication community supervision "based on a term which is not capable of objective definition." In his appellate brief, Carroll states, "The first issue to consider is whether the prohibition against possession of pornography provided adequate notice to Mr. Carroll of his actions." He continues, "Because the State chose 'pornography' rather than 'obscene material[,]' Mr. Carroll had not [sic] ability to follow or not follow the terms of his supervision." In other words, Carroll contends the word "pornography" lacked the necessary specificity to enable him to comply with that particular condition.

When the trial court placed Carroll on deferred adjudication community supervision, it did so under the following conditions: (1) Carroll would not "work, frequent, or patronize places where *pornographic* materials [were] sold"; (2) he would "not own or possess *pornographic* materials or frequent sexually oriented establishments"; (3) he would not "download, transmit, or possess *pornographic* material on any computer"; and (4) he would not "possess *pornographic* software, images, or material on any hard drive . . . ." (Emphasis added.). Despite the trial court's

4

repeated use of the word "pornographic," there is nothing in the record to indicate that Carroll did not understand the meaning of the word or its "objective definition" on the date he entered into the plea agreement. Likewise, Carroll did not object to the use of the word "pornographic" as being vague or ambiguous at the time he agreed to the conditions of his community supervision.

In *Speth*, The Texas Court of Criminal Appeals reasoned,

> An award of community supervision is not a right, but a contractual privilege, and conditions thereof are terms of the contract entered into between the trial court and the defendant. Therefore, conditions not objected to are affirmatively accepted as terms of the contract. Thus, by entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract. A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable. A trial objection allows the trial court the opportunity to either risk abusing his discretion by imposing the condition over objection or reconsider the desirability of the contract without the objectionable condition.

*Speth v. State*, 6 S.W.3d 530, 534–35 (Tex. Crim. App. 1999) (internal citations omitted). On appeal, Carroll states, "The State of Texas chose to impose a condition upon [him] which was not defined, and is purely speculative." If Carroll had difficulty understanding the terms of his community supervision, as he now contends he does, it was incumbent upon him to bring the issue to the trial court's attention at the time the parties entered into the agreement, that is, during the March 26, 2013, plea hearing. Thus, Carroll's complaint relates to the original plea proceeding and should have been addressed when the conditions of his deferred adjudication community supervision were initially imposed. Such complaint cannot be reviewed on appeal from the trial court's revocation of deferred adjudication community supervision. We, therefore, overrule Carroll's first point of error.

5

Next, Carroll complains that "[t]he trial court erred in allowing an unqualified expert opinion related to cell phone analysis" during the hearing on the State's motion to adjudicate guilt. Specifically, Carroll points to Deputy Randy Wheeler's[4] testimony regarding his use of a commercial software product to examine Carroll's cell phone. Carroll states that Wheeler had no training from a representative of the software company, "no video from that company, [and] no classroom or online instruction related to this software." Accordingly, Carroll maintains, Wheeler was not qualified to testify as an expert on the forensic computer software.

During the hearing on the State's motion to adjudicate guilt, the State's attorney asked Wheeler,

> Q.      What did you do with that cell phone after the pass code was given to you?
>
> A.      Extracted the data from it.
>
> Q.      Okay. After you extracted the data, what did you do to the phone itself?
>
> A.      Put it in evidence.
>
> . . . .
>
> Q.      Okay. All right. Did you forensically extract that cell phone, Exhibit No. 6?
>
> A.      Yes.
>
> Q.      Can you briefly tell the Court what that consists of?
>
> A.      We use software that's made by the Cellbrite company. The software that we use that we actually pay a license for is UFED 4 PC and physical analyzing.

---

[4]Wheeler is an investigator with the Trinity County Sheriff's Department.

UFED 4 PC is what we use to extract the data. UFED is an acronym for Universal Forensic Extraction Device.

Do you want me to tell you like how we -- like the procedure, how --

At that point, Carroll objected that Wheeler's testimony was "nonresponsive," and the trial court sustained his objection. Wheeler was then asked to describe the process of using the software program to extract the contents of a cell phone.[5] Wheeler complied with the request.

Subsequently, Wheeler attempted to offer into evidence State's Exhibit 7, which was a PDF copy and a reader file of the extraction data from Carroll's cell phone. At that point, Carroll asked the trial court for permission to voir dire Wheeler. Carroll asked Wheeler, among several other questions, whether he had "received any specialized training in the use of UFED for PC or Physical Analyzer?" Wheeler responded, "I would sit and watch Detective Bennet over the years. He would explain how he was doing it. I asked a lot of questions about the software and the cables and things that came with it, why you have to use different ones." Carroll continued to ask questions related to Wheeler's training in extraction of cell phone data. Carroll then asked, "You would have no way of knowing if the program that you used had, in fact, committed some sort of error and just not reported it?" Wheeler responded, "Yes." In response, Carroll objected to the admission of State's Exhibit 7, stating, "Your Honor, I would object to the admission of State's 7

---

[5]Among other things, Wheeler explained,

Yes. So first I would need to know what type of phone it is and then I can open up the UFED application, search the phone, and its going to give me clear instructions, which cable -- we have a bunch of different cables.

It will tell me which cable to use for this specific phone. You plug it in and follow the instructions on what you need to do and you basically hit 'start' and it extracts the data.

If it's a successful extraction, it tells you; and it stores that file on the computer.

Wheeler testified that he had conducted sixty cell phone extraction procedures.

7

at this time. It has not been sufficiently authenticated as being a direct bit for bit copy of the data contained in State's Exhibit 6." The trial court overruled Carroll's objection and admitted State's Exhibit 7.

To preserve error for appellate review, Rule 33.1 of the Texas Rules of Appellate Procedure "requires that the record demonstrate (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial judge either ruled on the request, objection, or motion, or he refused to rule and the complaining party objected to that refusal." *Haley v. State*, 173 S.W.3d 510, 516 (Tex. Crim. App. 2005) (citing TEX. R. APP. P. 33.1). An objection must be specific, timely, and made each time inadmissible testimony or evidence is offered. *Id.* at 516–17. A party's point of error on appeal must comport with the objection made at trial. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). To preserve error for appeal under Rule 33.1, the party's objection, unless it is apparent from the context, must be specific enough to "let the trial judge know what he wants, [and] why he thinks himself entitled to it, and [to] do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). As stated in *Resendez v. State*,

> The parties, not the judge, are responsible for the correct application of evidentiary rules; in order to preserve a complaint for appeal, the complaining party must have done everything necessary to bring the relevant evidentiary rule and its precise and proper application to the trial court's attention.
>
> . . . .
>
> [W]hen the context shows that a party failed to effectively communicate his argument, then the error will be deemed forfeited on appeal.

*Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009) (footnotes and citations omitted).

Here, although Carroll objected to the introduction of evidence related to the extraction process and the results obtained from the extraction of the contents of Carroll's cell phone, he did not object based on the grounds that Wheeler lacked the qualifications to testify as an expert on forensic computer software or the extraction of cell phone contents. Consequently, his point of error on appeal does not comport with the objections he made at trial. *See Thomas*, 723 S.W.2d at 700. Carroll has therefore waived this issue for appellate review.[6] We overrule his second point of error.

## III. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     October 9, 2018
Date Decided:       October 31, 2018

Do Not Publish

---

[6]Rule 103(e) of the Texas Rules of Evidence states that appellate courts may take "notice of fundamental error affecting a substantial right, even if the claim of error was not properly preserved." TEX. R. EVID. 103(e). Fundamental errors fall into "two relatively small categories of errors: violations of 'rights which are waivable only' and denials of 'absolute systemic requirements.'" *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (quoting *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993)). "Waivable only" rights include the right to assistance of counsel and the right to trial by jury. *Id.* "Absolute, systemic rights" include jurisdiction of the person, jurisdiction of the subject matter, a penal statute's compliance with the separation of powers section of the state constitution, a constitutional requirement that a district court must conduct its proceedings at the county seat, the constitutional prohibition of ex post facto laws, and certain constitutional restraints on the comments of a judge. *Id.* at 888–89. Notably, neither of the fundamental error categories includes the admission or exclusion of evidence, regardless of how probative or prejudicial the evidence might be. *Id.* Thus, Carroll was required to preserve any error in compliance with Rule 33.1.