

**IN THE**
**TENTH COURT OF APPEALS**

No. 10-21-00192-CV

**IN THE INTEREST OF T.B., AN ADULT**

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 16-03580-CRF-272**

**O P I N I O N**

T.B. was indicted for the felony offense of stalking. *See* TEX. PENAL CODE § 42.072. In 2018, the trial court found T.B. to be incompetent to stand trial and ordered T.B. committed for restoration to competency. In 2019, because the felony charge was still pending, a civil commitment jury trial was held, and based on the jury's findings, the trial court ordered extended mental health services for T.B. This Court affirmed that order. *See In the Interest of T.B.*, 594 S.W.3d 773 (Tex. App.—Waco 2019, no pet.).

Because T.B. was committed in a civil proceeding, his status must be reviewed annually. *See* TEX. HEALTH & SAFETY CODE § 574.035(h) ("An order for extended inpatient mental health services must provide for a period of treatment not to exceed 12 months."). Pursuant to the annual review, a jury trial was held in September of 2020 (during the

COVID-19 pandemic), and T.B. was again committed pursuant to the trial court's Amended Order of Civil Commitment: Charges Pending (Mental Illness) Under Article 46B.102, signed on September 17, 2020. This Court affirmed that amended order. *See In the Interest of T.B.*, Nos. 10-20-00263-CV and 10-21-00027-CV, 2021 Tex. App. LEXIS 4238 (Tex. App.—Waco May 28, 2021, no pet.) (mem. op.). During the pendency of the 2020 appeal, the trial court signed a Second Amended Order of Civil Commitment: Charges Pending (Mental Illness) Under Article 46B.102 on February 1, 2021. This Court reversed that second amended order. *Id.*

In July of 2021, again pursuant to the annual review, another jury trial was held, and T.B. was again committed pursuant to the trial court's July 29, 2021 Order of Civil Commitment: Charges Pending (Mental Illness) Under Article 46B.102. T.B. appeals that order wherein he was directed to receive in-patient mental health treatment for 12 months from the date of his arrival into a mental health facility. Because T.B.'s constitutional challenge to the unanimity of the verdict was not preserved and because the trial court did not err in excluding evidence, the trial court's Order is affirmed.

UNANIMOUS VERDICT

At the conclusion of TB.'s trial, the trial court accepted a verdict of 10 of the 12 jurors in favor of T.B.'s continued commitment. In his first issue, T.B. asserts that because the 14th Amendment to the United States Constitution requires a unanimous verdict in non-petty criminal prosecutions, and given T.B's involuntary loss of liberty, the trial court erred in accepting a non-unanimous verdict from the jury.

The State argues, and T.B. acknowledges, that T.B. has failed to preserve this issue

for our review because he did not object in the trial court below.  T.B., however, argues first, that the fundamental error doctrine excuses his failure to preserve the issue; and second, if it does not, the principles of *Marin* should be used or the error should be analyzed under the *Almanza* standard for charge error.  We disagree with T.B.

### *Fundamental Error*

In civil appeals, the fundamental-error doctrine is a narrow and limited exception to the procedural rules requiring parties to preserve error regarding their appellate complaints.  *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003).  In light of the strong policy considerations favoring the preservation-of-error requirement, the Supreme Court of Texas has called the fundamental-error doctrine "a discredited doctrine." *See id.*  At most, the fundamental-error doctrine applies in the following three situations:

(1) when the record shows on its face that the court rendering the judgment lacked jurisdiction of the subject matter;

(2) when the alleged error occurs in a juvenile delinquency case and falls within a category of error as to which preservation of error is not required; or

(3) when the error directly and adversely affects the interest of the public generally, as that interest is declared by a Texas statute or the Texas Constitution.

*See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) (including the first and third categories); *B.L.D.*, 113 S.W.3d at 350-51 (including the first and second categories).

T.B.'s argument appears to be two-fold.  He argues that because the United States Supreme Court held in *Ramos v. Lousiana*, ___ U. S. ___, 140 S. Ct. 1390, 1395, 206 L. Ed. 2d 583 (2020) that unanimous verdicts are required to convict in all serious criminal cases

pursuant to the 6th Amendment as applied to the States by the 14th Amendment,

>   (1) language that the right to a unanimous verdict is "vital," "essential," "indispensable," and "fundamental" implicates the lack of a trial court's jurisdiction to issue a non-unanimous verdict and thus meets the fundamental error doctrine; and

>   (2) non-unanimous jury verdicts in involuntary commitments, which deprive a person of liberty, affect the interest of the public as that is declared in the Texas Constitution or statutes of the State and also meet the fundamental error doctrine.

Accordingly, T.B.'s argument continues, a non-unanimous verdict in an involuntary civil commitment is fundamental error which does not require an objection to preserve the issue for appeal. We decline to extend *Ramos* to that conclusion.

First, *Ramos* is limited to non-unanimous verdicts in criminal cases. The 6th Amendment as well as Article 1, section 10 of the Texas Constitution are limited to criminal prosecutions. *See In the Interest of J.B.*, 605 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2020, no pet.). Further, in a civil commitment, state power is not exercised in a punitive sense and cannot be equated to a criminal prosecution. *Addington v. Texas*, 441 U.S. 418, 428, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). Second, T.B. does not direct this Court to any authority, other than his reliance on *Ramos*, that suggests a non-unanimous verdict in a commitment proceeding deprives the trial court of jurisdiction of the subject-matter of that proceeding to render a judgment. The subject matter before the trial court is an involuntary mental health commitment. T.B. does not contend that the trial court did not have jurisdiction of that proceeding.

Third, involuntary mental health commitment proceedings, such as this one, are civil rather than criminal in nature, and all the procedural requirements of a criminal

hearing are not strictly applicable. *In the Interest of T.B.*, 594 S.W.3d 773, 776 (Tex. App.—Waco 2019, no pet.). Rule 292 of the Texas Rules of Civil Procedure allows the rendering of a verdict by ten members of an original jury of twelve or by five members of an original jury of six. TEX. R. CIV. P. 292(a). And even though this perceived wrong by T.B. may affect T.B.'s own private interests, T.B. has not shown that it directly and adversely affects the interest of the public generally as that interest is declared by a Texas statute or the Texas Constitution. Thus, the fundamental-error doctrine does not apply to T.B.'s appeal.

*Marin*

In an attempt to further his argument that preservation is not required, T.B. alternatively argues that this Court should expand the fundamental-error doctrine by using the principles described by the Texas Court of Criminal Appeals in *Marin v. State*, 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993), overruled on other grounds by *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). In *Marin*, the Texas Court of Criminal Appeals identified three categories of rules or rights: (1) systemic (or absolute) requirements or rights; (2) waivable rights; and (3) forfeitable rights. *See Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004). T.B. asserts that, pursuant to *Ramos* and the Texas Supreme Court's decision in *In re C.O.S.*, 988 S.W.2d 760 (Tex. 1999), the right to a unanimous jury verdict in a civil commitment proceeding is a *Marin* category one or two right which would require an affirmative waiver before being subjected to procedural default rules on appeal.

As we noted earlier, *Ramos* is limited to verdicts in criminal cases, and we decline to extend its holding to civil commitment proceedings. Further, in *C.O.S*, the Texas

Supreme Court noted that juvenile proceedings were "quasi-criminal," a term that has not been used to describe civil commitment proceedings, and used the former Rules of Criminal Evidence to determine that *Marin* applied when reviewing preservation issues in juvenile cases. *See id*. at 765. T.B. has not provided us with any case authority, and we have not found any, that has expanded *C.O.S.*'s holding into the civil commitment arena. We decline to do so. Accordingly, we reject T.B.'s invitation to expand the fundamental-error doctrine to include a *Marin*-type review.

*Almanza*

T.B. presents another alternative argument asserting that this Court should use the *Almanza*[1] standard to review charge error in "quasi-criminal" involuntary commitment proceedings.[2] The logical extension of this argument is that if *Almanza* is the standard for reviewing charge error in this case, no preservation of the unanimity issue would be required, and we could, therefore, review T.B.'s issue for at least egregious error. T.B. has presented no authority, and we have found none, for the proposition that a commitment for mental health services pursuant to chapter 574 of the Texas Health and Safety Code is a "quasi-criminal" proceeding or that commitment proceedings such as his fall under the *Almanza* standard for reviewing charge error. We decline to hold *Almanza* applies in this proceeding.

---

[1] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

[2] Under *Almanza*'s dual standards of review, if the defendant timely objected at trial, reversal is required if the reviewing court finds "some harm" to the defendant; but if the defendant did not object, then reversal is warranted only upon a showing of "egregious harm" such that the defendant was deprived of "a fair and impartial trial." *Almanza*, 686 S.W.2d at 171.

*Conclusion*

Accordingly, because T.B. did not object to the trial court's acceptance of a non-unanimous verdict from the jury, T.B. has failed to preserve his first issue for our review, and it is overruled. *See* TEX. R. APP. P. 33.1.

**EXCLUSION OF TESTIMONY**

In his second issue, T.B. asserts the trial court erred in not allowing T.B. to cross-examine certain experts, specifically, Mary Conroy, Patrick Fallon, Satish Bhatt, "and perhaps [Robert] Costello" regarding T.B.'s immigration hold and in not allowing T.B. to argue such in closing. However, T.B. gave record references to the exclusion of questioning of only one expert, Conroy. Further, he presented no case authority as to the trial court's alleged error in failing to permit T.B. to argue T.B.'s immigration hold. He presented case authority regarding reviewing evidentiary rulings but not potential errors in argument.

Texas Rule of Appellate Procedure 38.1(i) provides that a "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1.(i). Texas courts have noted that "an issue not supported by references to the record is waived." *Nguyen v. Kosnoski*, 93 S.W.3d 186, 188 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see Dorton v. Chase*, 262 S.W.3d 396, 400 (Tex. App.—Waco 2008, pet. denied) (stating that issues that do not comply with Texas Rule of Appellate Procedure 38.1(i) are inadequately briefed and present nothing for review); *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied) (noting that an appellate court has no duty to perform an independent review of

the record and applicable law to determine whether the complained-of error occurred).

Accordingly, T.B.'s complaints regarding alleged improperly excluded testimony of Fallon, Bhatt, and Costello, and the improper exclusion T.B.'s argument regarding the immigration hold are not adequately briefed and present nothing for review. *See* Tex. R. App. P. 38.1. We will not discuss those complaints in this issue.

What we will discuss is whether the trial court erred in prohibiting T.B. from asking Dr. Conroy about T.B.'s immigration hold. Specifically, T.B. asserts, as he did in the trial court, that he should have been able to rebut the false impression given the jury that T.B. would walk free[3] with testimony from Conroy that because of the immigration hold, T.B. would not be released; he would be in federal detention. The State objected to the proposed testimony as irrelevant.

We review a trial court's exclusion of an expert witness's testimony for an abuse of discretion. *Gunn v. McCoy*, 554 S.W.3d 645, 666 (Tex. 2018); *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). A trial court abuses its discretion by failing to follow guiding rules and principles. *McCoy*, 554 S.W.3d at 666. To reverse a trial court's judgment based on the exclusion of evidence, we must find that the trial court did in fact commit error, and that the error was harmful. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

Opinion testimony that is conclusory or speculative is not relevant evidence

---

[3] According to the Texas Health and Safety Code, T.B. would be immediately released if, after a hearing, a court or jury failed to find that T.B. was a person with mental illness and met certain criteria for court-ordered mental health services. *See* TEX. HEALTH & SAFETY CODE § 574.033.

because it does not tend to make the existence of a material fact more probable or less probable. *See* TEX. R. EVID. 401; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 815 (Tex. 2009). However, evidence that might otherwise be inadmissible may become admissible when a party opens the door by leaving a false impression with the jury that invites the other side to respond. *Comm'n for Lawyer Discipline v. Cantu*, 587 S.W.3d 779, 787 (Tex. 2019).

When questioned on voir dire, Dr. Conroy testified that she knew of the immigration hold through conversations with the prosecutors but was not able to say what the immigration services would do with T.B. if he was released from his confinement on his mental health commitment. While arguing his point with the trial court, T.B. told the court that T.B. would remain in custody and would be transferred to the federal authorities, but what happened from there, "none of us know." The trial court responded that it was "all speculation," to which T.B. agreed. Then the trial court replied, "That's why I am going to sustain the objection. I'm not going to let you go into it with her."

If the jury did not answer the required questions about T.B.'s continued commitment in the affirmative, T.B. would have to be released. *See* TEX. HEALTH & SAFETY CODE § 574.033. That is not a false impression. What T.B. wanted the jury to know was that T.B. had an immigration hold which, based on the arguments made to the trial court, may or may not be a means to continue T.B.'s detention in a different facility.[4] What

---

[4] There was already evidence in the record of T.B.'s immigration hold through medical records that were introduced.

happened to T.B. as a result of the immigration hold was speculative, especially through the proposed questioning of Dr. Conroy. Accordingly, we cannot say that the trial court abused its discretion in granting the State's objection to the proposed testimony or in refusing to allow T.B. to rebut an allegedly false impression.

T.B.'s second issue is overruled.

**CONCLUSION**

Having overruled each issued on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed February 2, 2022
[CVO6]

