Death Opinion







 


 

 


 



IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. PD-0646-13






IRVING MAGANA GARCIA, Appellant



v.


THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FROM THE THIRTEENTH COURT OF APPEALS

HIDALGO COUNTY




 Alcala, J., filed an opinion dissenting from the denial of rehearing, in which
Johnson and Cochran, JJ., joined.

 

OPINION DISSENTING FROM THE DENIAL OF REHEARING


 It seems that, despite the great strides that Texas's criminal-justice system has made
in ensuring that all people will have fair trials, for every two steps forward there is one step
back. The Court's holding in this case represents that step back and affects not only the
Hispanic population in Texas, but all Texans who expect that their State's courts will
consistently abide by the requirements of the United States Constitution. See U.S. Const.
amends. VI, XIV. Non-English speakers and those with only a poor grasp of English
comprise approximately nine percent of the population in Texas, or roughly two million
people. See Camille Ryan, Language Use in the United States: 2011 American Community
Survey Reports, U.S. Census Bureau, Aug. 2013, at 3, 11, available at
http://www.census.gov/prod/2013pubs/acs-22.pdf (noting that roughly nine percent of those
Texans surveyed in 2010 who spoke a non-English language at home rated their English-speaking ability as "not at all," the highest of any state). Assuming that the same proportion
of non-English speakers will appear as criminal defendants in Texas state courts, that means
that this Court's majority opinion will likely affect tens of thousands of defendants who, like
Irving Magana Garcia, appellant, are unable to speak or understand the English language and
are entirely dependent on courts to provide language translators for them. (1)

 Despite the far-reaching effects of its decision, this Court's majority opinion used a
smoke-and-mirrors approach to deny appellant relief by addressing only a subpart of his
argument and not the thrust of his actual complaint. Specifically, rather than address the
heart of appellant's complaint that his waiver was not valid, this Court instead exhaustively
explained that a waiver may be shown through an off-the-record colloquy, but that matter had
already been recently decided by this Court and, therefore, the discussion was largely
immaterial to the resolution of this appeal. See Davison v. State, 405 S.W.3d 682, 685-87
(Tex. Crim. App. 2013) (record may be sufficient to establish waiver if it "otherwise
affirmatively discloses" that waiver was knowing and voluntary). The extensive discussion
of this issue resulted in disguising the following logical fallacy: An actual waiver colloquy
need not be on the record; here, the waiver was not on the record but there was a
representation to the trial court by counsel that appellant did not want an interpreter;
therefore, the waiver was valid. The fallacy in this reasoning is that it erroneously presumes
that counsel's statement to the trial court indicating that appellant did not want an interpreter
constituted a valid waiver of appellant's constitutional rights, the issue of which was the
disputed matter before the Court and which this Court never addressed. This Court should
grant rehearing because it has never addressed the ground presented in appellant's petition,
a ground that is exceptionally important to preserve the rights of thousands of non-English-speaking defendants in Texas. Because this Court refuses to grant rehearing, I must
respectfully dissent. 

I. The Majority Opinion Never Addressed Appellant's Ground in His Petition

 This Court's majority opinion began by setting up high hopes that appellant's
complaint would be addressed. In a single paragraph at the beginning of the analysis section,
the majority opinion accurately set forth the law for waiver of an interpreter. See Garcia v.
State, No. PD-0646-13, 2014 WL 1375457, at *2 (Tex. Crim. App. Apr. 9, 2014). It
observed that "the right[s] at issue here" fall under the second category in Marin v. State,
which requires that the "right must be implemented unless expressly waived." Id. (citing
Marin v. State, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)). It noted that "when the trial
judge knows that the defendant cannot understand English, an interpreter must be appointed
for the defendant unless the defendant waives such appointment." Id. (citing Garcia v. State,
149 S.W.3d 135, 144-45 (Tex. Crim. App. 2004)). The majority opinion concluded the
paragraph by noting that a litigant "is never deemed to have [waived his rights] unless he
says so plainly, freely, intelligently, sometimes in writing and always on the record." Id.
(citing Marin, 851 S.W.2d at 280) (emphasis original).

 After the single paragraph correctly describing the applicable law, the majority
opinion went astray by focusing in its remaining pages solely on the meaning of the above
italicized phrase, "always on the record." See id. at *3-4. This Court then affirmed
appellant's conviction through a single conclusory sentence that states, "The record here
contains evidence that trial counsel told appellant that he had a right to an interpreter, that
appellant agreed with counsel not to request an interpreter, and that appellant and counsel
communicated their desire not to have an interpreter to the trial judge, albeit in an off-the-
record bench conference." See id. at *4. This single sentence never explains how or why
this communication by appellant's counsel to the trial court, regardless of whether it was on
or off the record, met the requirements in Marin. See Marin, 851 S.W.2d at 279. More
specifically, the majority opinion never addressed the ground in appellant's petition for
discretionary review that inquired, 

 Did the court of appeals correctly fail to analyze the issue of whether appellant
Garcia made an intelligent, knowingly [sic] and voluntary waiver of his rights
to confrontations, equal protection, and due process under Amendments VI
and XIV, United States Constitution, to be knowingly present with and hear
in the Spanish Language from a qualified interpreter all said in the English
language during proceedings in the cause's critical stages at the pretrial
hearings and the jury trial? 

This Court should grant rehearing to answer the question it left unanswered previously,
namely, whether the communication from counsel representing to the trial court that
appellant did not desire an interpreter could be characterized as an intelligent, knowing, and
voluntary waiver of appellant's federal constitutional rights. 

 As pointed out in this motion for rehearing, the "record in this case affirmatively
shows that the trial judge and the attorneys for both the State and the defense knew that
Appellant could speak and understand only Spanish" and that "the trial judge did not make
any inquiries beyond merely asking Appellant's counsel if appellant wanted an interpreter." 
Furthermore, the motion for rehearing observes that "the record is also exceedingly clear that
Appellant's attorney never explained to his client that he had a personal and constitutional,
state and federal, right to have an interpreter, and to have him interpreting for him at all
phases of trial, and that it really was not his lawyer's right at all." The motion explains that
"it is undisputed that nobody (not the trial judge, not the prosecutors, not the interpreter, and
not defense counsel) ever informed Appellant he had both federal and state constitutional
rights which he would have to expressly waive." The motion concludes that the record
"certainly does not demonstrate that such waiver was a voluntary, knowing and intelligent
waiver." 

 The motion for rehearing accurately observes that the majority opinion wholly failed
to answer the pertinent questions in this appeal with respect to whether the appellant's waiver
was made knowingly and voluntarily. It states,

 These undisputed truths regarding Appellant and his ability to have any
understanding of the testimony of the majority of trial witnesses leads to two
questions which this Court failed to fully answer. First, whose rights were
explained to Appellant? Second, what did Appellant's acquiescence to his
lawyer's desires mean in the context of a waiver of personal rights? It is
fundamentally clear that, when trial counsel told Appellant he could have an
interpreter, but that he (defense counsel) did not want one, counsel was not
explaining the defendant's right to an interpreter. It is this failure which goes
unrecognized in the Court's opinion.


 As I observed in my dissenting opinion in this case, because he was aware of
appellant's language barrier, "'the judge has an independent duty to ensure that the
proceedings are interpreted for the defendant, absent the defendant's knowing and intelligent
waiver.'" See Garcia, 2014 WL 1375457, at *6 (Alcala, J., dissenting) (quoting Garcia, 149
S.W.3d at 144). The record before us shows that the trial judge did not make any inquiries
beyond merely asking appellant's counsel if appellant wanted an interpreter. This single
question and answer constituted the entirety of any discussions between the court and
appellant with respect to whether appellant wanted an interpreter. At no time did the trial
judge question appellant or his attorney about their reasons for declining an interpreter or
about whether appellant's waiver of an interpreter was being made knowingly and
voluntarily, and the trial court did not make any fact findings addressing whether appellant's
waiver was made knowingly and voluntarily. The record conclusively shows that counsel
did not want an interpreter for his own reasons and urged appellant to forego his right to an
interpreter without fully explaining the nature of the right at stake and the possible
consequences of waiving that right. The trial court then compounded the problem by failing
to verify that appellant's waiver was being made freely and voluntarily, with an adequate
awareness of his rights and the effect of the waiver. Because the record fails to show that
appellant plainly, freely, and intelligently gave up his right to an interpreter, a reviewing
court could not rationally hold that his waiver of an interpreter was made knowingly and
voluntarily. Rather than address this issue head-on, the Court's majority opinion instead
resolved this case by analyzing only a sub-part of appellant's arguments on a matter that had
definitively already been decided by this Court, thereby leaving unanswered the larger
question of whether appellant's waiver was valid. See Davison, 405 S.W.3d at 685-87.

 The Texas criminal-justice system has recently taken two steps forward with respect
to providing for language access in courts. First, according to the Office of Court
Administration (OCA), the Texas Legislature has recently provided funding for a Language
Access Program to "help reduce linguistic barriers to meaningful justice in Texas courts." (2) 
Second, as of April 2014, the "Texas Court Remote Interpreter Service (TCRIS) has now
completed four months of successful operation, responding to requests from 52 judges in 39
counties for 157 hearings, for quality Spanish interpretation by licensed court interpreters." (3)
Despite these two steps forward to provide language access for non-English-speaking
defendants in court, this Court's majority opinion takes the Texas criminal-justice system one
step back in this regard. Here, although an interpreter was actually present in the trial court
ready to provide his translation services for appellant, the trial court did not use him to
translate for appellant, not even to ask appellant if he knew he had a right to an interpreter,
if he wanted to waive one, and if so, whether his waiver was being made intelligently,
knowingly, and voluntarily. Regardless of any steps taken by the Legislature and the OCA
to provide language access for defendants in court, this Court will continue to constitute the
stumbling block in the path toward a better criminal-justice system in Texas until a majority
of the judges on this Court consistently enforce the federal constitutional right to an
interpreter.

II. Conclusion

 By doing nothing apart from asking trial counsel if appellant wanted an interpreter,
the trial court judge was either uninformed of his absolute duty to obtain an effective waiver
from appellant or unwilling to do so. This problem was compounded by the conduct of trial
counsel, who apparently believed himself to be so inept that he would be unable to
concentrate on witness testimony merely because of the presence of an interpreter. In light
of the fact that the interpreter translated the testimony of many of the Spanish-speaking
witnesses into English for the jury, trial counsel's reasoning that he would be unable to
concentrate if the interpreter also translated the testimony of English-speaking witnesses into
Spanish for appellant lacked any logical foundation and was misguided. Based on the
absence of information from the trial court judge and the misguided representations by trial
counsel, appellant cannot rationally be characterized as having been adequately informed of
his rights so as to have been able to make an intelligent, knowing, and voluntary waiver of
his federal constitutional right to an interpreter. This is not a problem caused by a lack of
funding or inadequate access to interpreters, but is instead one that implicates a judicial
failure to enforce federal constitutional rights. Because this Court's majority opinion refused
to even address appellant's federal constitutional complaint on the grounds that he presented
in his appeal, I respectfully dissent from this Court's denial of his motion for rehearing.


Filed: June 11, 2014

Publish


1. According to the Office of Court Administration, in fiscal year 2013, Texas criminal district
courts disposed of 266,236 cases, and statutory county courts disposed of 494,210 criminal cases.
See Texas Office of Court Administration, Annual Statistical Report for the Texas
Judiciary: Fiscal Year 2013, 40, 53 (Jan. 2014).
2. Texas Court Remote Interpreter Service Completes 157 Hearings, CourTex Newsletter
(Texas Office of Court Administration, Austin, T.X.), April 2014,
http://archive.constantcontact.com/fs126/1110322784858/archive/1117290237285.html; see also
Texas Judicial Council, Director's Report 9-10 (Feb. 2014), available at
http://www.courts.state.tx.us/tjc/meetings/022114/DirectorsReportFeburary2014.pdf. 
3. See Office of Court Administration, Remote Interpreter Service,
http://archive.constantcontact.com/fs126/1110322784858/archive/1117290237285.html.