**Affirmed and Majority Memorandum Opinion and Concurring Memorandum Opinion filed August 24, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00551-CR

---

**PATRICK ONIEL HOWARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 21-DCR-095022**

---

## MAJORITY MEMORANDUM OPINION

Appellant Patrick ONeil Howard challenges his conviction for robbery, enhanced by a prior conviction for possession of a controlled substance, for which the trial court assesses punishment at ten-years imprisonment. *See* Tex. Penal Code Ann. §§ 29.02, 12.42(b). He complains that the trial court committed assorted procedural errors implicating his due process rights, and generally contends that most, if not all, of these errors are "structural constitutional errors"

that did not require preservation in the trial court and which are immune to a harmless error analysis.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 12, 2021, appellant was indicted for robbery, and eight days later was served with the indictment.  A "Sherriff's Return" filed in the appellate record indicates that appellant was served in person by a Deputy Sheriff while in custody as a prisoner.[1]  The indictment reads as follows:

> The duly organized Grand Jury of Fort Bend County, Texas, presents in the District Court of Fort Bend County, Texas, that in Fort Bend County, Texas, [Appellant], hereafter styled the Defendant, heretofore on or about March 25, 2021, did then and there, while in the course of committing theft and with intent to obtain or maintain control of the property, intentionally and knowingly threaten or place Alma Azuz-Martinez AND/OR Brazos Valley Schools Credit Union in fear of imminent bodily injury or death;

> And it is further presented in and to said Court that, prior to the commission of the aforesaid offense (hereafter styled the primary offense), on the 1st day of December, 1997, in cause number 7890 in the 316th District Court of Hutchinson County, Texas, the Defendant was finally convicted of the felony of Possession of a Controlled Substance[.]

While in custody, his counsel moved for and the court ordered a competency evaluation.  The Fort Bend psychologist appointed to examine him concluded appellant was competent to stand trial.  Her report states that appellant "demonstrated basic factual understanding of his charge, as well as basic rational understanding and appreciation for potential consequences associated with his charge."

---

[1] Between the time appellant and State filed their briefs, the record was supplemented to include the Sheriff's Return.  Apart from any request to amend or supplement his brief, without leave of the court, appellant could have filed a reply brief addressing this portion of the record.

On September 29, 2021, the State moved to amend the indictment. The motion fully restates the text of the indictment and the text of the requested amended indictment. The amendment requested one letter in the first half of complainant's hyphenated last name be changed, (e.g., that Alma Azu**z**-Martinez be changed to Alma Azu**a**-Martinez).

The following day appellant, his trial counsel, and the State's prosecutor (with six witnesses) appeared in the 434th District Court in Fort Bend, and in open court, the two sides announced "ready". The trial commenced and concluded the same day.

Before opening statements, the trial court took up preliminary matters. First, the State's prosecutor called to the court's attention her motion to amend and asserted it was made to correct a misspelling in the victim's name. Appellant's counsel responded that she was "aware of that, Your Honor, and counsel has no objection." The trial judge granted that motion,[2] then appellant's trial counsel offered information concerning the subject of appellant's competency evaluation, stating:

> [Appellant's trial counsel]: Your Honor, I had the opportunity of meeting with [appellant] since the inception of this case on several occasions. And we have been able to have logical and rational conversations about these charges.
>
> In fact, today at his request we are having this trial. In addition, at his request we are -- [appellant] does intend at this moment -- he could change his mind, at this moment to testify in this matter.
>
> I would state to the Court that he has -- he is a person that has been diagnosed with schizophrenia and that is all delineated in the report written by Dr. Tonya Martin. Dr. Tonya Martin will be available later

---

[2] That motion contains a certificate of service asserting that it was served on Appellant's counsel on September 29, 2021 and an automated certificate of eservice showing that it was served on Appellant's counsel on September 29, 2021.

3

this afternoon to testify before the Court. But at this time I would move for the Court to take judicial notice of the report that's already with the Court.

THE COURT: The Court will take judicial notice of the competency to stand trial, criminal responsibility, sanity evaluation. In my file it is dated 6/29/21, and I have reviewed thoroughly the report that has been turned in by Dr. -- you said Dr. Martin, yes?

[Appellant's trial counsel]: Yes.

The state then offered eight exhibits, (State's Exhibits 1 through 8), to which appellant's counsel stated "no objection." The court admitted the eight exhibits.

Then, at the bench (beyond appellant's earshot), the State's prosecutor requested that two lay witnesses (the complainant and one other witness) be identified at trial only by their first names. To this request, appellant's counsel stated: "I don't have any objections."

In her opening, appellant's trial counsel agreed with the State's recitation of the evidence, stating:

> In fact, [appellant] today is not contesting that on the date in question he did enter into the Brazos Valley Credit Union. He did slide a note to the teller, which he had previously written out with a marker saying, "I have a bomb, give me money."
>
> And, in fact, that he did not make any overt gestures, did not have any weapons then or later. Money was tendered to him and he left the business and he was subsequently arrested without incident.
>
> The issue -- the only issue before the Court will be the testimony that you'll hear from [appellant]. And [appellant] will testify to the Court that on this date he is a person with severe mental illness, with schizophrenia. We have a long-standing diagnosis of schizophrenia.
>
> But on the day in question he said that the voices told him to go and do this, that he did not and would not freely and voluntarily have done it had he not been hearing voices on that date.
>
> Judge, we believe that the Court will be able to make the appropriate decision at the conclusion of all the evidence today.

4

The State then presented its case, wherein several witnesses testified that appellant robbed the Brazos Valley Credit Union by handing the teller a note which read: "GOT A BOMB, GIVE ME $ MONEY." Other testimony established that employees of the bank alerted the police, that appellant was apprehended walking along the street in which the bank was located, and that he was compliant and calm when arrested, and that he was found with money and the note.

Following the conclusion of the State's case in chief, the parties recessed and when they returned after the court announced they were back on the record the State requested that the court arraign appellant.

> [State's prosecutor]: And then I also wanted the Court to arraign the defendant before the Defense presents their case-in-chief.
>
> THE COURT: Let's go off the record for a second.
>
> *(Discussion off the record.)*
>
> THE COURT: Back on the record. So earlier on the record we -- there was an amendment to the indictment. There was no objection from Defense counsel. However, there is a ten-day notice requirement from the State, and I'm asking if Defense counsel has any objection to the ten-day notice?
>
> [Appellant's trial counsel]: I don't have any objection.
>
> THE COURT: Without objection, that is noted on the record. We also did not arraign the defendant prior to trial. So at this time I'd ask the State to arraign the defendant.
>
> [State's prosecutor]: Yes, Your Honor. The State of Texas versus Patrick O'Neil Howard:
>
> In the name and by the authority of the State of Texas, the duly organized Grand Jury of Fort Bend County, Texas, presents in the District Court of Fort Bend County, Texas, that in Fort Bend County, Texas, [appellant], hereafter styled the defendant, heretofore on or about March 25, 2021, did then and there, while in the course of committing theft and with intent to obtain or maintain control of property, intentionally and knowingly threatened or placed Alma Azua-Martinez and/or Brazos Valley School Credit Union in fear of

5

imminent bodily injury or death. Against the peace and dignity of the State. Signed by the foreman of the Grand Jury.

THE COURT: Okay. [Appellant], you've heard the allegations against you and the State has read the indictment to the record, how do you plead to these charges, sir?

[Appellant]: Not guilty.

THE COURT: Let the record reflect that the defendant has pled not guilty to the charges as listed in the indictment.

Appellant's trial counsel then began the case-in-chief for the defense, calling to the witness stand appellant who admitted to the acts described by the State's witnesses of the robbery. In support of his defense, he testified that he suffered from schizoaffective disorder and that he was not in his right mind on the morning of the robbery, that he was late by a week in getting a shot he typically received to treat the disorder. He further testified that he was prompted by voices in his head; he stated "voices were talking that they wanted me to commit another bank robbery". He admitted as he did to the police shortly after he was arrested that he came up with the idea from a former cell mate who had reported personal success with robbing banks in this manner.

When asked if he wanted to hurt anyone, he replied that it was not his plan to, that he just "wanted the money." Finally, to the question "And so you never did anything to make anyone feel like you wanted to hurt them?", appellant responded, "Of course I did, I went into the bank and robbed it." Appellant's counsel presented no other witnesses and the parties presented brief closing arguments. In its closing appellant's counsel reiterated appellant's plea was *not* "not guilty by reason of insanity" but simply "not guilty" for reasons consistent with appellant's mental illness. On rebuttal, the State pointed out evidence adduced showing the rational thought exhibited by appellant.

6

The court announced its finding that appellant was guilty of the listed charge of second-degree robbery, found true the enhancement for a prior conviction for possession of a controlled substance, and promptly began the punishment phase of trial.

During argument the prosecutor noted that the punishment range for appellant's second-degree-felony offense enhanced by prior conviction was between five and ninety-nine years. Appellant's trial counsel requested community supervision, or alternatively the minimum five-year prison sentence. The trial court assessed punishment at imprisonment for ten years as recommended by the State's prosecutor.

## II. ISSUES AND ANALYSIS

Like appellant's statement of (two) issues, his argument section is structurally divided in two parts. Yet, liberally construing the complaints set out in his brief, the first part raises three discrete issues to three separate procedural occurrences. The three respective questions raised are:

Did the trial court err in rendering judgment against appellant without appellant having been served the indictment prior to trial?

Did the trial court err in proceeding to trial in the absence of a statutory jury waiver?

Did the trial court err in failing to arraign (or read the indictment in open court) prior to the commencement of trial?

Much of the first part is also devoted to appellant's contention that these errors are categorically immune from ordinary preservation requirements. That is, appellant does not claim that he preserved error. Instead, he argues the law does not require preservation of error on any of his points. He contends all his points of error relate to one of two rare categories: complaints that absolute, systemic requirements were violated; or complaints related to rights which are waivable

7

only–those which the trial court has an independent duty to implement absent any request unless there is an effective express waiver. *See Richardson v. State*, 631 S.W.3d 269, 280 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) discussing *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993).

Similarly, the second part of his brief is devoted to arguing that the totality of the complained-of errors culminates in constitutional, structural error not susceptible to a harmless error analysis, or if so, that alternatively caused direct and immediate harm to the appellant.

## A. Service of the Indictment and Amended Indictment

Appellant complains that the trial court failed to ensure that he was served with his indictment, the amended indictment, or otherwise "apprise[d] him of the charges against him by reading him the indictment." Appellant relatedly contends as significant to these omissions the fact that he did not sign a waiver of arraignment.

*Service of an Indictment*

The Texas Code of Criminal Procedure requires prompt service by the sheriff to the accused of a pending indictment against him and requires that the sheriff file a return thereon, showing when and how the same was executed. See Tex. Code Crim. Proc. art. 25.02. Specifically, the relevant provisions state:

> In every case of felony, when the accused is in custody, or as soon as he may be arrested, the clerk of the court where an indictment has been presented shall immediately make a certified copy of the same, and deliver such copy to the sheriff, commanding him forthwith to deliver such certified copy to the accused.

Tex. Code Crim. Proc. art. 25.01.

> Upon receipt of such writ and copy, the sheriff shall immediately deliver such certified copy of the indictment to the accused and return

the writ to the clerk issuing the same, with his return thereon, showing when and how the same was executed.

Tex. Code Crim. Proc. art. 25.02.

Our record includes the precept to serve the indictment, and a return signed by the Fort Bend County Sheriff or his deputy who served the indictment. This return indicates that the Sheriff received the indictment on April 20, 2021, and served appellant with the indictment on April 20, 2021. On this record, there is nothing to rebut the evidence indicating that appellant was properly served with the original indictment. In the absence of any evidence that the statutory requirements were not complied with, appellant's argument that the trial court erred in failing to ensure that he was served with the indictment is overruled.

*Service of Amended Indictment*

Appellant also contends that the trial court denied his right to due process by failing to ensure that he was served with the amended indictment. With respect to amendments to the indictment, the Code of Criminal Procedure states:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

9

Tex. Code Crim. Pro. Ann. art. 28.10.

Even if, as appellant contends—his complaint concerning service of the amended charges implicates a category-one *Marin* right—such a complaint is not supported by the record; the record does not show that appellant was never served with an amended complaint. The unchallenged certificate of service on the State's motion to amend indicates that the State served a motion to amend the indictment on appellant's counsel the day before trial. Before trial began, appellant's counsel acknowledged the motion on the record, stated that she was aware of the proposed amendment and had no objection to the change and affirmatively waived ten days' notice to respond. Thus, to the extent appellant complains that his right to be given an opportunity to respond to the amended charges implicates a category-two *Marin* right, the record shows appellant's counsel affirmatively waived that right. As the record shows that appellant's counsel did not object to the amended indictment or information or request additional time to respond to the amended indictment, and that appellant's counsel waived the statutory notice period, we overrule appellant's complaint to the extent that he argues the trial court erred in failing to ensure that he was served with the amended indictment or failing to provide him an adequate opportunity to respond.

Moreover, the mere correction of one letter in complainant's name did not add a new charge or render the original charge against appellant a different offense, and nothing in the record shows that appellant's substantial rights were prejudiced. Both the original and amended indictment name the same bank as the place of the robbery and nothing in the record indicates the identity of the named teller was significant to appellant's defense, or a subject of dispute at trial. *See Wilharm v. State*, No. 01-15-00507-CR, 2016 WL 7369203, at *3–4 (Tex. App.—Houston [1st Dist.] Dec. 15, 2016, no pet.) (mem. op., not designated for publication) (holding

10

no error that trial court granted prosecution's amendment of indictment solely to change spelling of complainant's name immediately before trial); *See also Soules v. State*, No. 08-15-00384-CR, 2019 WL 5616974, at \*2–4 (Tex. App.—El Paso Oct. 31, 2019, no pet.) (mem. op., not designated for publication) (holding complaint on appeal fails where appellant failed to establish the offense in the original indictment was a different statutory offense than the offense for which he was charged after the indictment was amended).  Accordingly, we find no harm.

**B. Jury Waiver**

In his second issue, appellant alleges that the record contains no jury trial waiver, and contends that the trial court violated his right to a jury trial in the absence of an express waiver.

The right to a jury trial is a statutory and constitutional right, but neither the state nor federal constitutions require that a jury waiver be made in writing. *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002).  However, Article 1.13(a) of the Texas Code of Criminal Procedure, does require a written waiver; specifically, it provides:

> (a) The defendant in a criminal prosecution for any offense other than a capital felony case in which the state notifies the court and the defendant that it will seek the death penalty shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that, except as provided by Article 27.19, the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state. The consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the state shall be in writing, signed by that attorney, and filed in the papers of the cause before the defendant enters the defendant's plea.

> There is no dispute the trial court erred in failing to observe the mandatory

requirements of article 1.13. Appellant neither made an express request for a jury trial, nor did appellant execute a written jury waiver.

The State however, directs us to this court's recent decision which guides our harm analysis. In *Munguia v. State*, we held that where the record contains a judgment asserting that the appellant waived his right to a jury trial, and no contrary evidence appears in the record, the lack of a written jury waiver in the record will not result in reversal. 636 S.W.3d 750, 757–58 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). We addressed the issue as follows:

> A jury waiver is never presumed from a silent record, at least on direct appeal. *See Samudio v. State*, 648 S.W.2d 312, 314 (Tex. Crim. App. 1983). However, we do not have a silent record before us in this appeal. There is a judgment, rendered by the trial court, which states appellant waived his right to a jury trial. In the context of performing a harm analysis to address statutory error, the court of criminal appeals in *Johnson* discussed the presumptions applicable to a recital of waiver of the right to trial by jury:
>
>> The judgment recites that Johnson "waived trial by jury." That recitation is "binding in the absence of direct proof of [its] falsity." If Johnson "waived" a jury trial, then he must have known about his right to a jury trial, otherwise he could not have waived it. The very use of the term "waive" presumes knowledge, because "to waive a right one must do it knowingly—with knowledge of the relevant facts." In addition, "waiver" is defined as "the act of waiving or intentionally relinquishing or abandoning a known right, claim, or privilege."
>
> *Johnson*, 72 S.W.3d at 349 (internal citations omitted). The *Johnson* court reasoned that a recitation of a waiver of the right to a jury trial is "binding in the absence of direct proof of [its] falsity." *Id.* (citing *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g)). Without direct proof, the appellant cannot overcome the presumption of regularity in the judgment. *See id.*

*Munguia v. State*, 636 S.W.3d at 757–58.

Turning to the record in our case, we note the record contains a judgment which was promptly followed by a corrected judgment.  Though both only contain recitals indicating appellant's jury-trial waiver, and nothing contrary to this stated intent, the former, original judgment, contained unrelated inaccuracies, such as appellant's plea of "guilty". The relevant recitals contained in the live, corrected judgment, are expressed as follows: "The State waived its right to a jury trial and Defendant elected to proceed with a trial before the Court."

The only difference between this case and *Munguia* is that the recital language used to indicate the voluntary relinquishment of the right to a jury trial was arguably more precise in this case.  Whereas the recitals in *Munguia* and *Johnson* only employed the term "waiver", the trial court's corrected judgment in this case, in addition to using the phrase "WAIVER OF JURY TRIAL" in the title of the document, refers to appellant's *election*–an unmistakably voluntary act illustrating appellant's knowledge and deliberate choice of "a trial before the court" rather than a trial before a jury. As in *Munguia*, the record here contains no direct proof that the recital is false. In fact, elsewhere in the record, including appellant's testimony, appellant made statements consistent with the recital. During trial he stated:

> Of course I did, I went into the bank and robbed it. I understand that and for that I'm guilty as dead on. You know what I'm saying, to have this woman scared of me after six months after it's been done, she acts like it was yesterday or today or it just happened. You know, so that's terrible in my case and in the jury's -- *I mean in the Court's eye*. (emphasis added).

The record contains judgments indicating appellant waived his right to a jury, and in the absence of contrary evidence, those judgments are presumed to be true and regular. *See Munguia v. State*, 636 S.W.3d at 758.

**C. Arraignment and the Reading of the Indictment and Taking of The Plea**

Appellant's third complaint or group of complaints relate to the trial court's mid-trial arraignment of appellant, or the reading of the indictment and taking of his plea, after the State's case-in-chief.

The most direct point of error under this third complaint is that the trial court erred by failing to ensure that appellant was arraigned prior to the beginning of trial, and as a result, according to appellant, he was harmed because he was unaware of the complainant's name during trial.[3] Appellant also complains that the court committed reversible error for failing to read the indictment and take his plea at the beginning of trial because appellant had not expressly waived his right to arraignment, the two-day period between the indictment and arraignment, or the reading of the enhancement paragraph before his punishment hearing.

Our rules require that we presume the occurrence of certain regular procedural events which are not always apparent from the record, such as a defendant's arraignment and the court's taking of his plea, except when matters were disputed in the trial court, and except when the record affirmatively shows the contrary. Tex. R. App. P. 44.2(c)(3)&(4). Rule 44.2 states:

> (c) *Presumptions.* Unless the following matters were disputed in the trial court, or unless the record affirmatively shows the contrary, the court of appeals must presume:
>
> . . .
>
> (3) that the defendant was arraigned;
>
> (4) that the defendant pleaded to the indictment or other charging instrument;

The record affirmatively shows that defendant was arraigned and pleaded "not guilty" to the indictment, but, as appellant complains, these events occurred

---

[3] In connection with this complaint, appellant makes assorted accusations alleging the trial court and the State conspired against him.

14

out of the ordinary sequence.

At the outset we distinguish between two statutory procedures referred to by appellant. First, Chapter 36 of the Code of Criminal Procedure defines various procedures applicable to *jury trials*. Appellant frequently refers to the first provision in this Chapter which sets out a prescribed sequence of events for jury trials. The first step in this sequence, provided in article 36.01(a)1, describes the procedure for reading the indictment to the jury, as follows:

> (a) A jury being impaneled in any criminal action, except as provided by Subsection (b) of this article, the cause shall proceed in the following order:
>
> > 1. The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

Tex. Code Crim. Proc. Ann. art. 36.01.

Having already addressed appellant's jury-waiver issue, Chapter 36 is not germane to appellant's bench trial and does not control the outcome of this appeal. Nor are we aware of (or does appellant point to) any similar statutory right to the reading of the indictment applicable to bench trials, at any specific phase of the trial.

When the trial court read appellant the amended indictment and took his plea, appellant could have lodged an objection and requested that the State reintroduce evidence but failed to do so. *See Reed v. State*, 500 S.W.2d 497, 499 (Tex. Crim. App. 1973)(overruling complaint challenging whether was arraigned and that 'he pleaded to the indictment,' when the record revealed appellant had been arraigned and that appellant had pleaded to the indictment but that he failed to

15

complain about it at trial). Moreover, appellant counsel agreed to the modified procedures. *See Keith v. State*, No. 09-00-00485-CR, 2001 WL 1441242 at *5 (Tex. App.—Beaumont Nov. 14, 2011, pet. ref'd) (mem. op., not designated for publication)(overruling complaint that trial court erred for failing to "arraign [defendant] at trial" and by "failing to have [him] enter a plea to the indictment at trial" where appellant assented to modified procedures when moving forward to guilt-innocence at pretrial suppression hearing). Under these circumstances we decline to read into Rule 44.2(c), any sequence, stage or timing essential to any one of the listed occurrences. Because appellant's trial counsel assented to the mid-trial arraignment or the court's acceptance of appellant's not-guilty plea, and the record does not show that these events did not occur, the presumption under Rule 44.2(c) has not been overcome. *See id.; see also Reed v. State*, 500 S.W.2d at 499; Tex. R. App. P. 44.2(c)

Though the thrust of appellant's complaint seems to target the procedure in Chapter 36, appellant also makes a passing mention to the provisions contained in Chapter 26 of Texas Code of Criminal Procedure, which provide the rules pertaining to arraignments. That Code section provides that "in all felony cases [including those tried by a judge rather than a jury], after indictment, there shall be an arraignment." Tex. Code Crim. Pro. Ann. art. 26.01. The stated purpose of the arraignment procedure is for "fixing his identity and hearing his plea." Tex. Code Crim. Pro. Ann. art. 26.02. The Code further states:

> No arraignment shall take place until the expiration of at least two entire days after the day on which a copy of the indictment was served on the defendant, unless the right to such copy or to such delay be waived, or unless the defendant is on bail.

Tex. Code Crim. Pro. Ann. art. 26.03.

Though it is not clear that appellant raises the issue, the only perceivable

statutory error committed by the court is that it arraigned appellant less than "two entire days" after he was served with the amended indictment. Although appellant's counsel had clearly indicated a waiver of the right to service of the indictment before trial, it less clear that appellant waived the right to be arraigned "at least two entire days" after being served with a copy of the amended indictment. To the extent the right was not waived, and to the extent the trial court erred in failing to hold the arraignment after the passing of the prescribed period, we consider whether appellant was harmed.

Appellant contends this error to be structural error. Presuming for the sake of argument that the court committed this structural error, the error is subject to review under Texas Rule of Appellate Procedure 44.2(a), such that we must reverse unless the record shows beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Much of appellant's argument with respect to harm is based on his contention that he was neither served with the indictment or amended indictment, such that in his perspective, the mid-trial arraignment was the first time he had been apprised of his charge. As already discussed above, the record does not support these contentions. Moreover, it is significant that appellant's counsel waived the 10-day notice period required for the service of the indictment, and did not request a continuance of trial. Appellant fails to explain, nor can we find in the record, how the correction of the teller's last name altered in any way his ability to defend the robbery charges against him or how this contributed to his conviction or punishment. See Tex. R. App. P. 44.2(a). Despite the unconventional sequence at trial, i.e., the mid-trial arraignment, where appellant was given the opportunity to hear the State's entire case-in-chief prior to being required to state his plea on the record, we find the error harmless.

Because we find beyond a reasonable doubt that the error did not contribute

to appellant's conviction or punishment, we overrule appellant's third complaint.

### III. CONCLUSION

We have carefully considered all of appellant's stated grounds of error. Having found no grounds for reversible error in the record, we affirm the judgment of the trial court.

/s/    Randy Wilson
Justice

Panel consists of Justices Spain, Poissant, and Wilson.

Do not publish — Tex. R. App. P. 47.2(b).